(Decided 12th January, 1894.)

---

BALTIMORE TRACTION COMPANY OF BALTIMORE CITY *vs.* STATE OF MARYLAND, use of VIRGINIA T. RINGGOLD, and others.

*Street railway—Contributory negligence—Who are not Regarded as Passengers—Erroneous instruction.*

A person about forty-five years of age, and weighing about two hundred pounds, who attempts to board a street car moving at the rate of six or more miles per hour, with a bottle in his right hand and a basket on his left arm, is guilty of such negligence as will relieve the company of liability for his death, because of failure to stop the car, unless the conductor, on discovering the peril of the deceased, failed to use proper diligence in endeavoring to avoid the accident.

One attempting to board a street car moving six miles an hour, cannot be regarded as a passenger, and entitled, as such, to be protected from injury by the conductor, but is entitled only to such reasonable care and caution on the part of the conductor, as is due to a person not a passenger.

In an action to recover damages from a railway company for death occasioned by the attempt of the deceased to board a street

NOTE.—The subject of liability for injuries received in getting on or off cars, is treated with great fullness in a note to *Carr vs. Eel River & Eureka R. Co.* (*Cal.*) 21 *L. R. A.*, 354.

car in motion, an instruction to the jury that their verdict must be for the plaintiff, if they find any want of ordinary care on the part of the defendant's conductor or gripman, or either of them, by failing to stop the car when signalled, or to notify the deceased not to attempt to board the car, is erroneous where it is not qualified by reference to the effect of contributory negligence, if there be evidence of such negligence.

APPEAL from the Court of Common Pleas.

This was an action brought in the name of the State, for the use of the widow and children, and mother of Edward Ringgold, deceased, against the appellant, a street railway company, a body corporate under the laws of the State, to recover damages for the death of the deceased, who was run over and killed by a car of the defendant. The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiff offered seven prayers which are omitted, as all of them, save the seventh, were rejected, and that was not discussed in the opinion of the Court. The defendant offered the two following prayers, and eight others which it is deemed unnecessary to insert:

1. That if the jury find from the evidence that Edward Ringgold, the deceased, being of the age and physical condition stated in the evidence, received injuries which resulted in his death, while attempting to get on board a car of the defendant company, and that said injuries would not have occurred if said deceased had not made such attempt; and shall further find that at the time the said deceased did so attempt, the said car was in motion and running at the rate of six miles per hour or more, and that said deceased, at the time of making such attempt, had in his right hand a bottle and a basket on his left arm; and shall further find that by so holding said bottle in his right hand he was pre-

vented from grasping with his right hand the handle attached to said car, then the said deceased was guilty of contributory negligence, and their verdict must be for the defendant, unless they shall further find that the defendant's agents, after becoming aware of the deceased's negligence, failed to exercise reasonable care and prudence, under the circumstances of the case, whereby the consequence of such negligence might have been prevented.

2. That if the jury find from the evidence in the case that the accident complained of was in any degree owing to the want of due care and caution at the time of the accident on the part of the deceased, directly contributing thereto, then their verdict must be for the defendant, unless they shall further find that the defendant's agents, after becoming aware of the deceased's negligence, failed to exercise reasonable care and prudence, whereby the consequences of such negligence might have been avoided, and there is no evidence in the case from which the jury can find that the defendant's agents did so fail to exercise ordinary care and prudence, after becoming aware of deceased's negligence.

The Court (PHELPS, J.,) rejected all the prayers of the defendant and all those of the plaintiff, except the seventh prayer, which was granted, and gave the following instructions of its own:

1. If you find that Edward Ringgold, the deceased, was fatally injured by any want of ordinary care on the part of the defendant's conductors or gripmen, or either of them, such as by failing to stop the train when signalled, or to notify the deceased not to attempt to board, or by first slowing up and then increasing speed after deceased reached the car, or by failing to stop the train after the peril of the deceased became apparent, or by letting the deceased go after grasping him under the arm, or by failing to afford the deceased a reasonable

opportunity, under the circumstances, of taking a safe position, or otherwise, and shall further find that the equitable plaintiffs were related to the deceased as claimed, then the verdict should be for the plaintiff.

2. But if you find any failure of the deceased, at the time, to exercise ordinary care on his part, as by attempting to board a car in too rapid motion while the deceased was holding a bottle and a basket, running after the same for that purpose, or by ordering the conductor to let him go, while in the act of trying to help him up, or otherwise, and that the same directly contributed to the accident in such wise, that without such failure the accident would not have occurred, then the defendant is entitled to a verdict, unless you further find that, after the peril of the deceased became apparent, the defendant's agents, or either of them, could have prevented the accident by the exercise of ordinary care on their part.

3. By ordinary care is understood that degree of caution, attention, activity and skill, which are habitually employed by, or may reasonably be expected from, persons in the situation of the respective parties, under all the circumstances surrounding them at the time.

4. The burden of proof is on the plaintiff to show want of ordinary care on the part of the defendant's agents, and on the defendant to show contributory negligence on the part of the deceased; and it is for the jury to find from all the circumstances in evidence, upon the principles laid down, whether either of the parties, and which of them, was responsible for the accident. The defendant excepted.

*Second Exception,* was taken by the defendant to the action of the Court in excluding certain evidence which was offered. The exception was not passed upon by this Court, and the evidence is therefore not inserted.

The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, McSHERRY, and BOYD, J.

*N. Penniman Bond,* (with whom were *Howard Munnikhuysen,* and *Robert D. Morrison,* on the brief,) for the appellant.

The Court did not cover the point contained in the defendant's first prayer, in its instruction. That prayer asked the Court to say to the jury that if they found from the evidence that the deceased, being of the age and physical condition stated, tried to board a car running at the rate of six or more miles per hour, and that when he made the attempt he had on his left arm a basket, and in his right hand a bottle, and by so holding the bottle he was prevented from grasping the handle of the car with his right hand, that then the deceased was chargeable with contributory negligence.

Now can there be any question about which reasonable minds could differ, as to the negligence of attempting to board a car under such circumstances. Those facts constituted negligence in law, and the defendant was entitled to have the jury so instructed.

In the language of this Court in the case of *Union R. R. Co. vs. State, use of Steever,* 72 *Md.,* 159, "it was, therefore, the right of the defendant to have the mind of the jury directed to the specific facts in evidence, and instructed as to the effect of such facts if found to exist." All of the facts recited in the prayer were in evidence, and as to most of them there was no contradiction.

The second instruction granted by the Court, by no means gave to the defendant its "right" as above defined. The Court said in substance "if you find a failure on the part of deceased to exercise ordinary care as by attempting to board a car in too rapid motion, &c.,

then your verdict must be for the defendant," thus leaving it to the jury to say whether or not such facts, if found, did constitute want of ordinary care. But it was the right of the defendant to have the minds of the jury "directed to the specific facts in evidence, *and instructed as to the effect of such facts, as found to exist*," that is, to have them told that they *did* constitute negligence, and not to have it left to them to say whether they did or not. *Union R. R. Co. & P., W. & B. R. R. Co. vs. State, use of Steever*, 72 *Md.*, 159; *Phil., Wilm. & Balto. R. R. Co. & Union R. R. Co. vs. State, use of Gunther*, 66 *Md.*, 510; *Coleman vs. Second Ave. R. R. Co.*, 114 *N. Y.*, 611.

The Court also erred in rejecting the defendant's second prayer. This prayer requested the Court to charge that if the jury should find that the deceased was negligent there was no evidence from which they could find that the defendant, after becoming aware of the danger of the deceased, did not use due care to avoid the consequences of his negligence.

It was the uncontradicted testimony that as soon as the conductor of the defendant became aware of the attempt of the deceased to board the car, he grasped him under the arm, and continued to prevent his falling until the deceased three times demanded that he should let go, and that as soon as he did let go, he did all that could be done to stop the car.

He could not even attempt to stop the car sooner, because, while leaning out and grasping the deceased, his other hand was necessarily grasping the car handle, to keep from being himself dragged off.

It is true that if he had not let go of the deceased, it is probable that he might have saved him. But can it be said to be negligence to comply with a demand thrice repeated to let go? Even if, as in this case, the conductor was of opinion that it was more dangerous for

Baltimore Traction Co. *vs.* State, use of Ringgold.

him to do as he was requested by the deceased, the latter had the right to judge for himself what was best for his own salvation, and the fact that we followed his unfortunate judgment should not be charged to us as negligence. *Holohan vs. W. & Geo. R. R. Co.,* 8 *Mackey,* 316.

Yet the Court not only refused to grant this prayer, but in its first instruction told the jury that they might find the defendant guilty of negligence "by letting go the deceased after grasping him under the arm."

The learned Judge also erred in his first instruction, because he thereby told the jury that if they found that the defendant's car did not stop when signalled to do so by Ringgold, such a failure was negligence on which they could have a verdict for the plaintiff.

Aside from the question whether it was negligence to fail to stop at any other place than the corner, when it appeared uncontradicted in evidence that a reasonable regulation of the company forbade the employés to do so, the failure to stop the car did not in any way cause the injury complained of. If the deceased had not attempted to board the car while in motion, the going on of the car could not have injured him. The liability to injury originated when the deceased attempted to board the car. And at best it could not be contended that the failure of the car to stop was other than a remote cause of the injury, and that it in no way directly contributed thereto.

"A remote cause is that which may have happened anywhere, yet no injury occurred, notwithstanding no injury could have occurred if it had not happened." *Balto. & Ohio R. R. Co. vs. State, use of Trainor,* 33 *Md.,* 554; *Klipper, et al. vs. Coffey,* 44 *Md.,* 129.

*C. Baker Clotworthy,* and *J. Southgate Lemmon,* for the appellee.

The plaintiff had every right to contend that by his signal given from a proper place in a visible manner, Ringgold had tendered himself as a passenger and had lawfully demanded passage from the defendant carrier, which was bound to receive him, (*Corlin vs. West End Street Ry. Co.,* 154 *Mass.,* 197,) and that by its slowing down in response to his signal, the conductors of the cars were notified of the approach of passengers, and that by taking hold of Ringgold for the purpose, not of avoiding an accident, which he admits he did not then expect, but of assisting him on the car, Sanders, the conductor, accepted him as a passenger.

The defendant insisted that Ringgold contributed to his death by attempting to board a moving train encumbered by a basket on his left arm and a bottle in his right hand, and that such attempt, if the car was moving at the rate of six miles or more, constituted contributory negligence on his part and necessitated a verdict for the defendant, unless the jury should further find that the defendant's agents "after becoming aware" of deceased's negligence failed to exercise reasonable care and prudence, &c., whereby, &c.

It is true that Ringgold had a small basket on his left arm, leaving that hand however free, and that his use of his right hand was embarrassed by a beer bottle containing his tea, but it is equally true that his situation in this respect, was visible to all lookers-on, and that the defendant's agents, in accepting him as a passenger, owed him greater care by reason thereof. "They (the agents) are presumed and required to have the ordinary senses." *Balto. & Ohio Railroad Co. vs. Leapley,* 65 *Md.,* 576.

On his part Ringgold was entitled to reception as a passenger upon his signal. *Pearson vs. Duane,* 4 *Wall.,* 605; *Eppendorf vs. B., C. & N. Y. Railway Co.,* 69 *N. Y.,* 195; *Corlin vs. West End Street Ry. Co..* 154 *Mass.,* 197.

His signal and the response thereto established him as a passenger, and it was not necessary to the completion of the relationship, that he should have first safely entered the car.    *Allender vs. R. R. Co.*, 37 *Iowa*, 270.

These companies have no ticket offices and use the streets for their stations, and like other carriers are bound to provide safe ingress and egress for those seeking transportation upon their cars.   *Balto. & Ohio R. R. Co. vs. State, use of Mahone*, 63 *Md.*, 144; *Phil., Wilm. & Balto. R. R. Co. vs. Anderson*, 72 *Md.*, 526.

If, therefore, Ringgold had a right to believe himself accepted as a passenger, he had the further right to believe that his safety would be cared for to the utmost of the skill and caution of the defendant's agents, and to rely upon the fact that at whatever speed the car was going, it would be checked and not increased until he was safely on the platform.    *Corlin vs. West End Street Ry. Co.*, 154 *Mass.*, 197; *Birmingham Union Ry. Co. vs. Smith*, 90 *Ala.*, 60; *Conner vs. Citizens' Street Ry. Co.*, 105 *Ind.*, 62; *Harmon vs. The W. & G. R. R. Co.*, 7 *Mackey*, 255, 261, 264, 265, 266, 267; *Phil., Wilm. & Balto. R. R. Co. vs. Anderson*, 72 *Md.*, 529, 530; *Chicago City Ry. Co. vs. Mumford*, 97 *Ill.*, 564.

Any other rule would absolve the managers of our rapid transit lines from all responsibility for the lives of incoming passengers, and expose the latter to all the dangers which careless motormen or conductors may see fit to inflict upon them.   This relationship of Ringgold to the carrier, however, is ignored in the defendant's first prayer, which segregates the fact that he attempted to board a moving car while so encumbered, and so makes him negligent, *per se*, without regard to his signal, its acceptance, the assistance, and the invitation thereby extended by conductor Saunders to him.   When the latter reached out for Ringgold he practically told him to get on, and after doing that, "it would come

with a very ill grace from the road to say to the passenger, you have been careless because you obeyed the order of my agent." *Balto. & Ohio Railroad Co. vs. Leapley*, 65 *Md.*, 578. To whatever conclusion the jury might have come upon the subject of Saunders' action, there was evidence from which they could find the invitation to Ringgold, and it was error to ignore the effect of that invitation upon the deceased in his effort to board the car. With one hand clear, the conductor to relieve the other of the bottle, and the promise of due care and caution on the part of all hands on the train, the question of the deceased's prudence was very different in fact from that presented in the defendant's prayer, and the omission of these facts vitiated the prayer. *Merchants' & Miners' Transportation Co. vs. Story*, 50 *Md.*, 15; *Adams vs. Capron*, 21 *Md.*, 205–6.

He must have seen the other passenger ascend the moving trailer and have noticed his own car still slowing down for himself.

The defendant's first prayer is also defective in absolving the carrier from all duty of avoiding the consequences of the plaintiff's alleged negligence until its agents became actually "aware" of it. Under this theory, by closing their eyes, the defendant's agents would be released from all care, and the impossible burden of proving they did in fact see, would be cast upon the plaintiff.

This, however, is not the law. *People's Pass. Railway Co. vs. Green*, 56 *Md.*, 93; *Central Ry. Co. vs. Smith*, 74 *Md.*, 212; *Balto. Traction Co. vs. Wallace*, 77 *Md.*, 435.

The earlier cases here cited were those of passengers, but that of *Wallace* rested upon the duty owing by the drivers of street cars to citizens approaching their tracks.

In the case of *Smith*, in 74 *Md.*, 212, the railway company distinctly claimed exemption unless the driver of its car discovered the peril in time to have avoided the acci-

dent, but this Court sustained the instruction that the defendant was liable, notwithstanding any contributory negligence, if the peril of the plaintiff *could have been discovered* by the driver in time to have avoided the accident.

The defendant's second prayer is not only obnoxious to the objection last made to the first prayer, but to the further one that it sought to take from the jury the testimony which showed how easily Ringgold might have been saved from death even after the defendant's agents in fact discovered or "became aware" of his peril. The testimony of conductor Corcoran shows this. He calmly admits having seen the deceased catch the front car, encumbered as he was, and that he started to give the signal which would have stopped the car, but failed to do so because he thought conductor Saunders could get him on the car, and there he stood and watched the race with death while Ringgold lost breath and strength, until Saunders dropped him beneath the very car on which Corcoran stood, the "murderous trailer" without guards to its wheels, which did poor Ringgold to his death, while its manager took chances upon the strength of Saunders' arm. Apart however from Corcoran's negligence, Saunders himself swears he had Ringgold safe and could have kept him so, but that he dropped him with full knowledge of the consequences, to his death, simply because the deceased in his distraction of mind foolishly asked him to do so. Whether Saunders was right in dropping him after voluntarily grasping and holding him against Ringgold's will, until the speed had so much increased, was properly a question for the jury.

Ringgold was entitled to the utmost degree of care, skill and diligence consistent with the nature of the defendant's business, not only by way of precaution when he notified the cars of his approach, but by way of prevention after his peril, however caused, became man-

ifest.  *Balto. & Ohio Railroad Co. vs. Leapley*, 65 *Md.*, 576; *Phil., Wilm. & Balto. Railroad Co. vs. Anderson*, 72 *Md.*, 526, 527.

PAGE, J., delivered the opinion of the Court.

On the 26th May, 1891, Edward Ringgold, desiring to take one of the defendant's cars to go to his business, left his home, having in his right hand a beer bottle containing cold tea, and on his left arm a small basket, about eight inches long, containing his lunch.  He stopped on the west side of Druid Hill avenue, at a point twenty-five or thirty feet south from Dolphin street, and there he raised his arm for the purpose of signalling a car which was then coming down the avenue.

Gallagher, the gripman, states, that he saw him standing there looking at the cars, but "saw no signal or indication on the part of the deceased that he wanted to get on the car."  As the car came down the avenue, it slowed up as it approached Dolphin street, and as it crossed "it was going slow," but after it reached the south side of Dolphin street, its speed was suddenly increased.    The gripman gives as the reason for this that when he approached Dolphin street, "there was a gentleman who got on the trailer, * * * and that after passing the south corner, * * * and seeing no one there to get on, the witness started the train up gradually until five bells were rung, which was the signal to stop immediately."  When the car had passed about thirty feet from Dolphin street, and while it was still moving, the deceased, who had moved into the street, made an effort to get on.   Before he could do so, the speed of the car was increased.  He grabbed the car with his left hand, and, running by its side, tried to board it.   The conductor seeing him in this position, seized him under the arm to prevent him from falling.   The deceased then told him, "Let go my arm, I can get on," and twice he

repeated the words "Let me go;" and the conductor, though he says, he thought he could hold on to him, and thus prevent an accident, then let him go, whereupon he fell, and was killed by being run over by the trailer. It also appears from the evidence that the conductor, after he seized Ringgold, was unable to make the signal to stop the car, until after he let him go, because of the fact, that both his hands were then occupied,—one in holding Ringgold, and the other in retaining his own position on the car. The train consisted of two cars, the power being in the forward one. There was a conductor on each car, and a bell on the trailer, which did not connect with the bell on the grip-car, and could not be heard by the gripman, in consequence of which all signals from the trailer had to be repeated by the conductor on the grip-car, in order to reach the gripman. By Rule 7 of the company, gripmen were required to keep a sharp look-out for passengers, and stop train at proper place to receive them, looking in each direction at cross streets; to stop trains to take on and let off passengers at the far side of cross streets (except where special notice should be given from time to time of other places,) and stop so that the rear platform of the rear car will be over the flagstones.

Ringgold was about forty-two years of age, a little over five feet two inches in height, and weighed above two hundred pounds. He was active, intelligent for a man of his color, temperate, and accustomed to use the cars daily.

The parties offered several prayers, all of which (except the seventh of the plaintiff's, upon the measure of damages,) the Court refused, and granted in lieu thereof instructions of its own, intended to cover the whole case; and the rejection of the defendant's prayers, the granting of the seventh prayer of the plaintiff, and the instructions given by the Court, constitute the defend-

ant's first exception.  The objection to the seventh prayer of the plaintiff was not pressed at the argument. Also, it was not contended that it was error to refuse the defendant's prayers though correct in themselves, if the instructions actually given by the Court, cover the same points in other forms.  It was insisted, however, that the Court's instructions were erroneous, and did not present the case to the jury as particularly as the defendant was entitled.

By the defendant's first prayer, the Court was asked to instruct the jury, that the deceased was guilty of such carelessness as to amount in law to contributory negligence, if they found that being of the age and physical condition stated in the evidence, he received his injuries in consequence of his attempt to board the car, while it was moving at the rate of six or more miles per hour, with a bottle in his right hand and a basket on his left arm, and by reason of being so encumbered, was prevented from grasping with his hand the handle attached to the car.  While it is well settled that where there is a contrariety of evidence, and the question of care or negligence depends upon the consideration of a variety of circumstances, "the most a Court can do is to define the degree of care and caution exacted of the parties, and leave to the practical judgment and discretion of the jury the work of comparing the acts and conduct of the parties concerned with what would be the natural and ordinary course of prudent and discreet men under similar circumstances;"  *Balto. & Ohio Railroad Co. vs. Fitzpatrick,* 35 *Md.,* 44; yet cases do occur, in which there is clearly established such glaring acts of carelessness on the part of the plaintiff, as to amount in law to contributory negligence and in such it is the duty of the Court when requested, so to instruct the jury. *McMahon vs. North. Cent. Railway Co.,* 39 *Md.,* 449.

This prayer, however, does not take from the jury the finding of the facts upon which it is based.  The Court

is asked to instruct them that the deceased was guilty of contributory negligence, as matter of law, but only upon the hypothesis of their finding the several facts stated in the instruction. Such a conclusion, in a case like this, is ordinarily a matter to be submitted to the jury, to be determined by them. Even if the facts were conceded or proved beyond the possibility of contradiction, it may still, sometimes, be a matter of doubt, whether the danger was so apparent as to make it the duty of the person to desist from the attempt. But when on account of the rate of speed, or for other reasons, no reasonably careful person, of ordinary strength and agility, would make the effort, it is then negligence in law, and it is the duty of the Court, on proper application, so to instruct the jury. *Corlin vs. West End Street Railway Co.*, 154 *Mass.*, 198; *Picard vs. Ridge Av. Pass. Ry. Co.*, 23 *At. Rep.*, 566; *New York, Phila. and Norfolk R. R. Co. vs. Coulbourn*, 69 *Md.*, 369; *Baltimore & Ohio Railroad Co. vs. Kane*, 69 *Md.*, 27; *Cumberland Valley Railroad Co. vs. Maugans*, 61 *Md.*, 61.

The proof shows that Ringgold was about forty-five years of age, and accustomed to use the cars daily. He was extremely stout in proportion to his height. His weight was about two hundred pounds, though his height was slightly over five feet two inches. His wife testifies, that he was *very active;* another witness, that he was "fairly active." There was testimony tending to prove that the rate of speed when he attempted to board the car was six miles an hour or more. He was encumbered by having in his right hand a beer bottle, and on his left arm a basket about eight inches in length, and being so encumbered, there was evidence tending to show that he ran alongside the car endeavoring to leap or climb upon it. We are of the opinion that if under these circumstances the deceased chose to make the experiment of attempting to enter the car, he

must be required to bear the consequences of his own act, unless the defendants, when they discovered his peril, failed to use the proper diligence in endeavoring to avert the injury. *Phillips vs. Rensselaer and Saratoga R. R. Co.*, 49 *N. Y.*, 177; *Reddington vs. Philadelphia Traction Co.*, 132 *Pa. St. R.*, 154.

It is also contended that the prayer was bad because it permitted the jury to find a verdict for the defendant, without requiring them also to find that the peril of the deceased could not have been discovered by the driver, by the exercise of diligence in time to avoid the acci-dent. But under the theory of this prayer we do not think this would have been proper. The hypothesis upon which they could find for the defendant, was, that Ringgold had negligently attempted to enter the car. If they so found, such conduct would be the proximate cause of the injury, unless there supervened some con-tributing negligence on the part of the railway. Proxi-mate cause is the act which directly produces the injury. *Baltimore and Ohio R. R. Co. vs. Trainor*, 33 *Md.*, 542.

And if that was due to the improper conduct of the deceased, or if such conduct so far contributed to it, that without it, the accident would not have occurred, the plaintiff would not be entitled to recover, unless the defendant could by care and prudence, have avoided the consequence of such negligence. *Lewis vs. Balt. & Ohio R. R. Co.*, 38 *Md.*, 588.

If, therefore, the jury found that the cause of the accident is to be attributed in this case to the act of the deceased in having attempted to board the car, when it was obviously imprudent for him so to do, the fact that the agents of the defendant failed to stop the car, although such failure may have been a breach of duty on their part, cannot affect the question.

By the rules of the company, it was the duty of the gripman, to keep "a sharp look out for passengers, and

stop the car at proper places," but if he failed to do so, it would not authorize the deceased to do an imprudent act, and thereby place himself in peril. If a party thinks proper to make an experiment, under circumstances of peril open and known to him, and which he could reasonably have avoided, he must bear the consequences of his own act. *Dietrich vs. Balto. & Hall's Springs Railway Co.*, 58 *Md.*, 359. If the car was moving too rapidly for any man, encumbered as the deceased was, prudently to attempt to board it, it was not the duty of the defendant's agents to notify him not to make the effort. They were authorized to infer, that being a sane person, and *sui juris*, his own sense of danger would prevent him from doing an obviously imprudent and dangerous act. Many cases may be cited to support this statement. In *Frech vs. Phila., Wilm. & Balto. R. R. Co.*, 39 *Md.*, 580, where a person was run over by the defendant's cars, while on the latter's track, the Court says: "The defendant's agents were justified in acting upon the reasonable supposition that the plaintiff would be guided by his own sense of danger." In *Holohan vs. W. & Geo. R. R. Co.*, 8 *Mackey*, 324, the Court held, under circumstances similar to the case at bar, that the defendant was not bound to anticipate the negligence of the plaintiff, (he being *sui juris*,) and to warn him; "its servants," said the Court, "had the right to assume, under the circumstances, that the plaintiff being *sui juris* and in possession of all of his faculties, desired to stop the car and intended not to get on the car until it stopped." *Schofield vs. Chicago & St. Paul Railway Co.*, 114 *U. S.*, 615.

Even if the jury found that the signal to stop was or ought to have been seen by the gripman, and the deceased had a right to suppose, from the slowing of the car, that his tender of himself as a passenger had been accepted, it would not authorize him to make an attempt

Baltimore Traction Co. *vs.* State, use of Ringgold.

to enter under circumstances of peril open and known to him, and which by the exercise of his senses, he could fully understand. He was on the street, and not on the property of the company, and need not have so acted unless he chose so to do. *Dietrich vs. Balto. & Hall's Springs Railway Co.*, 58 *Md.*, 359.

In such a case he must·bear the consequences of his own act, provided the agents of the defendant as soon as the dangerous position was discovered by them, used all reasonable efforts to prevent an accident. *State, use of Harvey vs. Balto. & Ohio R. R. Co.*, 69 *Md.*, 347.

We will add here, to avoid misunderstanding, that we do not mean to decide that there are no cases in which the duty rests upon the defendant to exercise diligence in discovering a peril to which the plaintiff may be exposed by his own act. *Central Railway Co. vs. Smith*, 74 *Md.*, 216, was such a case. There the car had stopped, the plaintiff was about entering, and it was the duty of the driver not to start until she was in a position of safety, and it was proper for the Court to instruct the jury to that effect.

It is contended, however, that the subject of this prayer is fully covered by the instructions granted by the Court. It is true that by the second paragraph of those instructions, the jury were told that if they found "any failure of the deceased to exercise ordinary care on his part, as by attempting to board a car in too rapid· motion, while the deceased was holding a bottle and a basket, running after the same for the purpose, etc." But as was said by this Court in *Balto. & Ohio R. R. Co. vs. Mali*, 66 *Md.*, 60, the defendant was entitled to a "definition of what would constitute contributory negligence;" or, as was said in *Union Railroad Co., et al. vs. State, use of Steever*, 72 *Md.*, 159, "to have the mind of the jury directed to the specific facts in evidence and instructed as to the effect of such facts if found to

Baltimore Traction Co. *vs.* State, use of Ringgold.

exist." We are of the opinion, therefore, there was error in the rejection of this prayer. The second prayer of the defendant asked the Court to say to the jury, that there was no evidence in the case from which they could find that there was negligence on the part of the defendant after becoming aware of the perilous position of the deceased.

It was insisted at the argument by the appellee's counsel, that at the time the conductor released his grasp on the deceased, the latter was a passenger, or in the position of a passenger, and in the keeping of the railroad, and that, though the defendant's agent was told by the deceased, three times to let him go, and did so, in consequence of this demand, that the act of the conductor in then letting him ago, was evidence from which the jury could find there was negligence on the part of the defendant.

But the prayer requires the jury to find as a preliminary fact that the deceased was on the car and in the perilous position described in the evidence by his own imprudent act, and if he was, we do not think he ought to be regarded as a passenger. There was no evidence that the gripman saw his signal, and if he did, the deceased could not infer his tender to become a passenger had been accepted by the slowing of the car; provided it was still moving so rapidly as to make it obviously unsafe to attempt to board it. The relation of carrier and passenger may indeed be implied from slight circumstances, but one who intends to take passage on a street car, cannot be regarded as a passenger, while he is in the act of entering it, unless he does so with a proper degree of care and prudence. The street was in no sense a passenger station for the safety of which the company is responsible. *Booth's Street Railway Law*, 445; *Creamer vs. West End St. Ry. Co.*, 31 *N. East. Rep.*, 391; *Platt vs. Forty-third St. & Grant St. Ferry R. R. Co.*, 2 *Hun*, 124.

So, until he had entered the car, or was in the act of *prudently* entering, he had not placed himself in the charge of the defendant; and if the attempt to enter was so obviously reckless and careless as to amount in itself to contributory negligence, it would be unreasonable to hold that such imprudent conduct entitled him to be regarded as a passenger while hanging on to the outside of the car.

In *Smith vs. St. Paul City Ry. Co.*, 32 *Minn.*, 1, the Court pronounced an instruction correct, which set out that when a person intends to take a street car, and has hailed it, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of *carefully* and *prudently* attempting to step on the platform. *Booth's Street Railway Law*, 326.

If, therefore, the jury found as they were required by this prayer, that when the deceased was discovered by the agents of the defendant, he was clinging to the car, and in a position of peril by his own imprudent act, the duty of the conductor towards him was not that of the utmost diligence, but only such reasonable care and caution as is due to a person not a passenger. *Balto. & Ohio R. R. Co. vs. Breinig*, 25 *Md.*, 378.

If this be so, the duty of the conductor was to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation. *State, use of Coughlan vs. Baltimore & Ohio R. R. Co.*, 24 *Md.*, 84.

Ringgold was a sane man in full possession of his faculties, and accustomed to the use of cars. He believed he could recover himself, if released, and therefore thrice demanded to be let go. The conductor's duty to him was the same as that of the passenger to the railroad, in *Balto. & Ohio Railroad Co. vs. Leapley*, 65 *Md.*, 577, viz., that of ordinary care, when the conductor directed the passenger to alight from the moving

car; and in which the Court said, "it would come with a very ill grace from the road, to say to the passenger, you have been careless and negligent, because you obeyed the order of my agent." If Ringgold was in the position of a passenger, the rule of the duty of the conductor might not be the same. The railroad would then have had the safety of the deceased in its keeping, and it would have been the duty of the conductor to have exercised the utmost diligence for his protection. But if that relation did not exist, Ringgold had a right to judge for himself, and insist upon having done whatever seemed to him to be the proper thing to ensure his safety. He had a right to have his thrice expressed wish respected, and that it was so respected, ought to furnish him, if he were alive, or his representatives, now that he is dead, no just ground for complaint. By the last clause of this prayer the Court was asked to instruct the jury, that there was no evidence from which the jury could find that the defendant failed to exercise ordinary care after becoming aware of the deceased's negligence. If the jury had found there was negligence on his part in attempting to board the car, for the reasons we have given, this would have been correct, but if they found there had not been such negligence on his part, and therefore that the relation of the deceased to the company was that of a passenger, then there would have existed the duty on the part of the conductor, to exercise the utmost diligence and care, and it would have been their province to determine whether the conduct of the defendant's agents in letting him go met the requirements of that rule. It was only in the event of their finding the contributory negligence in attempting to board the car that the jury could properly be instructed that there was no evidence of want of proper care on the part of the defendant's agents in averting the consequences of his act, and it should have

been so put to the jury. We think the prayer for this reason was properly rejected.

In discussing these two prayers, we have so thoroughly gone over the whole case, that we do not deem it necessary to advert to the other rejected prayers of the defendant. To do so, would be either to repeat what has already been said, or to indulge in a criticism upon their form. We will add, however, that in our opinion the two first paragraphs of instructions by the Court are erroneous, and by their form likely to mislead. By the first the jury are instructed that if they find "any want of ordinary care on the part of the defendant's conductors or gripmen, or either of them, such as by a failure to stop the train when signalled, or to notify the deceased not to attempt to board," etc., then the verdict should be for the plaintiff. By this no question as to the contributory negligence of the deceased is to be passed upon by the jury. Possibly the learned Judge intended the first paragraph to be read in connection with the second, but the instructions as framed do not make this apparent, and for that reason are capable of easily misleading the jury. But even if this was not correct, and the two sections be taken together, we think they ignore the question as to the proximate cause of the accident. For instance, they instruct the jury that if they find want of care on the part of the defendant in any one of the several matters joined in the instruction by the disjunctive "or," whether it bore any relation to the proximate cause of the accident or not, there must be a verdict for the plaintiff. We are of the opinion this was error. And beside this, the parties were entitled to "have the mind of the jury directed to the specific facts in evidence, and instructed as to the effect of such facts if found to exist."

*Judgment reversed, and*
*new trial awarded.*

(Decided 12th January, 1894.)