## UNITED STATES FIDELITY & GUAR-
## ANTY CO. v. ASCHENBRENNER.*
### No. 7110.

Circuit Court of Appeals, Ninth Circuit.
June 26, 1933.

Horace W. B. Smith and George A. Work, both of San Francisco, Cal., for appellant.

Wright & Wright & Larson, John Ralph Wilson, and Randell Larson, all of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Except in minor respects, the facts in this case are undisputed. In the following summary, we are adopting the interpretation of the facts most favorable to the appellee.

The appellant issued a policy of insurance under which Walter Aschenbrenner, hereinafter referred to as the decedent, was the assured, and the appellee, who was the plaintiff below, was the beneficiary. The policy provides for a payment of $7,500 as the principal sum against loss of life resulting directly and independently of all other causes from accidental bodily injuries. .

The policy further provides for double indemnity payable as follows:

"Schedule V.                    Double Indemnities.

"The amounts payable in all the forego-

*Rehearing denied September 6, 1933.

ing schedules shall be doubled if 'such injury' is sustained by the insured,

"(1) While a passenger in or on a public conveyance (including the platform, steps, or running board thereof) provided by a common carrier for passenger service."

The only issue in this case is whether the double indemnity or only the single indemnity is payable under the facts. The appellant conceded at the trial that it was liable for the single indemnity; the accidental death being established. The only question in the case is whether, at the time of the decedent's fatal injuries, he was a "passenger" on or in a common carrier, within the terms of the policy.

About 7:35 in the morning of October 29, 1931, the decedent and a friend, a Mr. Ishem, arrived at the Southern Pacific Broadway Station in Burlingame, Cal., in a taxicab. The cab drew up at a distance of between 25 to 40 feet from a train, which was just commencing to pull out of the station. The decedent paused a moment, fumbling for money with which to pay the taxicab driver, who told him to go on and pay him that night; whereupon the decedent and his companion commenced running for the train across the station platform.

The train was headed north, bound for San Francisco. The two men ran somewhat on a diagonal toward the track. Ishem was on the left and a little ahead. He did not attempt to board the train, but stopped as he came to it.

When the two men reached the train, it was moving at a rate of speed estimated at from seven to ten miles an hour.

The decedent was running for the front platform of the second to the last car on the train, and Ishem was running for the rear platform of the third car from the rear of the train. The vestibule doors were open, because, according to a brakeman who testified, "the train was not out of the station." Another witness testified that the vestibule doors were never closed.

The decedent jumped upon the lower step, his right hand grasping the handrail, and, while standing there, he was carried to where Ishem stood.

The cause of the accident, as indicated by the testimony of three of the witnesses, was that, as the train moved forward, carrying the decedent to the point where Ishem stood, the decedent's overcoat or the small part of the decedent's body outside of the vestibule, brushed against Ishem and caused the dece-

dent to lose his hold and fall. From the time he jumped on the train until he was carried to the point where Ishem stood, the decedent was standing with both feet on the lower step of the car and inside the vestibule, except for a small part of his body, which was outside. The decedent was carrying his overcoat over his left arm and a brief case in his right hand. After he was on the step, he "apparently started to change hands with his overcoat or brief case."

The train proceeded about twenty feet when the decedent fell. The cause of his fall is not clear. While, as we have seen, three witnesses said that the decedent brushed against Ishem, the remaining witnesses did not know what caused him to fall.

The decedent swung out from the train, holding only with his right hand, was thrown against the side of the car, and fell between the platform and the track, and was crushed, dying at a hospital a few hours later.

Both sides made timely motions for a directed verdict in their respective favor. All such motions were denied, exceptions were duly taken, and the case was submitted to the jury. The verdict was for a double indemnity, or $15,000. From a judgment rendered on that verdict, the defendant company appeals.

While there are three assignments of error, our decision upon the first is determinative of the case. That assignment is to the effect that the trial court erred in denying the appellant's motion for a directed verdict as to the appellee's claim for double indemnity. The correctness of that assignment, in turn, depends upon whether or not the decedent was a "passenger" on the train at the time of his death; or if, as a matter of law from the facts in the case, interpreted so as to give the appellee the benefit of every substantial conflict, the decedent was not a passenger at the time he fell, then clearly the trial court should have directed a verdict for the appellant on the double indemnity feature of the case.

The adjudicated cases dealing with the precise point involved are not numerous, particularly those decided by federal courts. Furthermore, there is some conflict in the authorities. For these reasons, we will quote frequently and fully from the leading cases in point, instead of following our usual practice of quoting only a few authorities and citing the rest.

It may be conceded at the outset that a policy is to be construed strictly against the

insurance company and liberally in favor of the insured. Nevertheless, the Supreme Court of the United States has definitely fixed the boundaries of this liberality in favor of the insured. In Ripley v. Railway Passengers' Assur. Co., 16 Wall. (83 U. S.) 336, 338, 21 L. Ed. 469, Mr. Chief Justice Chase, in dealing with an accident insurance policy, said: "The contract must receive the construction which the language used fairly warrants. What was the understanding of the parties, or, rather, what understanding must naturally have been derived from the language used?"

■ Applicable here also is the language of the St. Louis Court of Appeals in Mitchell v. German Commercial Accident Co., 179 Mo. App. 1, 161 S. W. 362, 363, 364: "Though it be that the language of insurance contracts is to be construed most favorably to the insured and against the insurer with a view to effectuating the insurance, and that all doubtful language is to be resolved in favor of the insured, the courts are not authorized to seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract."

The appellee contends that, in a case of this kind, the court should construe the word "passenger" in its "plain, ordinary, and popular sense." During the oral argument before this court, counsel for the appellee suggested the dictionary definition of "passenger," such as "a person who travels in a public conveyance," as applicable here. But such a definition would include members of a train crew, who, even in the "popular" sense, are not considered "passengers."

■ It must be remembered, after all, that the policy in question is a legal document, solemnly executed, and that such document is being construed in a court of law. We can see no reason why the parties to this contract did not intend that the terms used should have their usual *legal* signification. Indeed, both reason and authority point to the opposite conclusion.

The term "passenger" is used primarily in contracts, whether express or implied, between carriers and those who are transported by them. It would seem, therefore, that, for the proper definition of the term "passenger," we should turn to the law of carriers.

This suggestion, however, has been vigorously resisted by counsel for the appellee, both in the brief and in the oral argument. Counsel makes the somewhat unusual contention that "passenger" means one thing in the law of carriers and quite another in the law of insurance.

We cannot subscribe to this view, for we believe that it finds support neither in logic nor in authority. Both legal reasoning and legal language would become hopelessly obscure and confused if definitions, instead of being in truth "definite," could thus be shifted about.

We believe that the rule is properly expounded in Cooley's Briefs on Insurance (2d Ed.) vol. 6, p. 5590: "Policies usually provide for the payment of double indemnity if the injury causing disability or death is received under certain specified conditions. One of the most common provisions is one that provides for double indemnity if the injury is received while riding as a passenger in any conveyance intended for the transportation of passengers. *In determining who is a passenger within such a clause, the same rules are applied as would govern if the action. was* [were] *against the carrier."* (Italics indicate bold-faced type in the text.)

This rule was recognized in the case of Travelers' Ins. Co. v. Austin, 116 Ga. 264, 42 S. E. 522, 524, 59 L. R. A. 107, 94 Am. St. Rep. 125, in which the Supreme Court of Georgia said: "With this in view, the true test to be applied to determine whether one injured in a railroad accident can recover from an insurance company double indemnity is to inquire whether, presuming that a right of action exists against the railroad company, the plaintiff would be entitled to sue that company in the capacity of a passenger or an employee."

In that case, the court held that the decedent was solely an employee and not a passenger of the company.

In Berliner v. Travelers' Ins. Co., 121 Cal. 458, 465, 53 P. 918, 921, 41 L. R. A. 467, 66 Am. St. Rep. 49, the court said: "These were cases that involved the liability of the railroad company for injury to its passengers while rightfully upon the engine, and were not cases of accident insurance; but the word 'passenger,' as here used, is evidently intended to designate the character or relation the insured sustained to the proprietor of the conveyance, and are therefore in point."

In Quinn v. New York Life Ins. Co., 224 Mich. 641, 195 N. W. 427, 428, the Supreme Court of Michigan said:

"It is further contended that, as between plaintiff and the defendant, a different rule should be applied than between plaintiff and

the street car company on the question whether the insured was a passenger at the moment he was struck.

"Considering the last question, we are unable to see why any distinction should be made between the insurance company as a defendant and the street car company. At the time the provision, 'while traveling as a passenger on a street car,' etc., was adopted by defendant and made a part of its contract, that phrase had well-understood meaning in the law, and it is reasonable to suppose that the meaning given to it by the courts was well understood and considered by defendant before making it a part of its double liability, and it was well known by both parties when the contract was made that, should the parties afterwards disagree upon the question of liability, the courts would probably give the language the same construction they had given it in cases where transportation companies were defendants. We cannot agree with defendant in this suggestion."

It is true that the decisions in both the Berliner and the Quinn Case, supra, were adverse to the insurance company. In the Berliner Case, the policy excluded recovery 'for an accident while the insured was "in or on any such conveyance not provided for transportation of passengers." The court held that the decedent, though riding on the locomotive, at the invitation of an official of the railroad, at the time of the accident, was, within the terms of the policy, a passenger, since "the locomotive is part of the 'conveyance' provided for the transportation of passengers upon a railroad." In the Quinn Case, the decedent was struck down by a taxicab while he was stepping off, or after he had stepped off, a street car that was slowing down to a stop. The court there held that, since there was testimony to "justify an inference by the jury that Quinn was struck while in the act of alighting, and before he had safely alighted onto the pavement," he was a passenger, and that therefore his widow could recover under the policy. The policy in that case covered death "while traveling as a passenger on a street car," etc. .

The facts of both the Berliner and the Quinn Cases are easily distinguishable from those at bar. Hence the judgments there rendered against the insurance companies do not detract from the authority of those two cases for the general proposition which they lay down; namely, that, for the definition of the term "passenger," the courts must have recourse to the law of carriers.

To that law we now turn.

In the language of Judge Sanborn in the case of Purple v. Union Pac. R. Co. (C. C. A. 8) 114 F. 123, 126, 57 L. R. A. 700: "A contract is indispensable to the relation of carrier and passenger. The minds of the parties must meet upon the agreement that the carrier will transport and the passenger will pay for the transportation, in the absence of a specific agreement or permission by the proper officer of the transportation company that the latter will carry the passenger without compensation. This contract of carriage may, it is true, be express or implied, but if it does not exist in either form the relation of carrier and passenger cannot have been created. An implied agreement to pay fare, and hence the relation of carrier and passenger, undoubtedly arises where one enters a passenger car and rides towards his destination." See, also, Fels v. East St. Louis & S. Ry. Co. (C. C. A. 8) 275 F. 881–883; Pere Marquette R. Co. v. Strange, 171 Ind. 160, 84 N. E. 819, 821, 85 N. E. 1026, 20 L. R. A. (N. S.) 1041.

Like all other contracts, the contract of carriage arises through an offer or invitation, express or implied, and an acceptance, express or implied. When a train is stationary at some place where it is the custom of the railroad to take on passengers, there is an implied invitation to the general public to avail itself of the company's transportation facilities by boarding the train.

But, when the train commences to move, that invitation is withdrawn, for it may no longer with physical safety be accepted.

In Tompkins v. Portland Ry., etc., Co., 77 Or. 174–179, 150 P. 758, 759, the late Mr. Justice Bean, a jurist held in high esteem in this circuit, thus formulated the rule: "There is little controversy on the question that the stopping of a street car at the place where passengers are usually received constitutes an invitation to the public to board the car and become passengers. This invitation continues while the car is standing. The starting of the car is a withdrawal of the invitation."

In Palmer v. Willamette Valley Southern Ry. Co., 88 Or. 322, 171 P. 1169, 1172, L. R. A. 1918D, 1114, the Supreme Court of Oregon again recognized the above principle, in the following language: "While waiting at the depot a standing train serves as an invitation to all intending passengers to board it, and the invitation carries with it an assurance that the passenger may board the train in safety. [Case cited.] But starting the

train ordinarily operates as a withdrawal of the invitation. [Authorities cited.]"

Both the rule and the reason therefor are well stated in White's Personal Injuries on Railroads, Vol. II, at §§ 556 and 783, pages 838 and 1176:

"Nor does a person become a passenger, who gets on a train after it has started to move, until he actually reaches a place of safety inside the car and no action can be maintained by his representatives, if he falls off the platform and is killed, in attempting to get on such train. * * *

"Boarding or attempting to board a moving train is an improper and dangerous act *and in legal contemplation, the invitation of the railroad company is withdrawn the very instant the train begins to move*. If there is no evidence, therefore, of any invitation on the part of the train employees, for the passenger to board the moving train, or nothing to show that they knew of the passenger's attempt and ratified it, there can generally be no recovery for an injury received in such an attempt." (Italics our own.)

The rule has been recognized in the Third Circuit in the case of Trapnell v. Hines (C. C. A.) 268 F. 504, 506, in which Judge Woolley used the following language: "The plaintiff did not avail himself of these instrumentalities of safety but boarded the train on the wrong side after the train had started; that is, on a side at which the carrier had made no preparation to receive passengers and *at a time when the carrier had, by starting the train, withdrawn his invitation to passengers*." (Italics our own.)

In Illinois Cent. R. Co. v. Cotter, 103 S. W. 279, 280, 31 Ky. Law Rep. 679, the Court of Appeals of Kentucky said: "One who attempts to jump upon a rapidly moving train does not become a passenger upon the train, although he may have a ticket for it. Dodge v. R. R. Co., 148 Mass. 209, 19 N. E. 373, 2 L. R. A. 83, 12 Am. St. Rep. 541; Baltimore Traction Co. v. State, 78 Md. 409, 28 A. 397; Hutchinson on Carriers, § 249; 3 Thompson on Negligence, § 2636."

A similar statement by the same court is to be found in Kentucky Highlands R. Co. v. Creal, 166 Ky. 469, 179 S. W. 417, 418, Ann. Cas. 1917C, 1205, which cites the Cotter Case, supra, and is published, with annotations, in L. R. A. 1916B, at pages 830–835.

Again, in Mathews v. Metropolitan St. Ry. Co., 156 Mo. App. 715, 137 S. W. 1003, 1005, the Kansas City Court of Appeals said: "It is clear that the attempt of Math-ews to board the car after it had left the usual stopping place, and was starting up the incline, did not create the relationship of passenger and carrier."

The Supreme Court of Missouri adopted this doctrine in the case of Schepers v. Union Depot R. Co., 126 Mo. 665, 29 S. W. 712, 714, where it said: "It follows from what has been said that plaintiff did not become a passenger by a mere attempt on his part to board the car while in motion, as is declared by this instruction. There must have been some act on the part of the carrier indicating an acceptance. Stager v. Ry. Co., 119 Pa. 70, 12 A. 821." See, also, Lee v. Baker (Tex. Civ. App.) 251 S. W. 580; Schaefer v. St. Louis & S. Ry. Co., 128 Mo. 64, 30 S. W. 331, 332; 4 R. C. L. §§ 489, 490, 493, pp. 1029–1033, 1036–1039.

But, as we have seen, although the intending passenger fails to become a passenger in fact and in law, by merely attempting to board a moving train, he does become a passenger when he reaches a place of safety. In the instant case, however, the event itself shows that decedent never reached a place of safety; else he would not have been killed! His position upon the lower step of the car was of so brief a duration, and his lack of equilibrium during that instant of time was so evident, that it would be paradoxical to say that the decedent had reached a place of safety at the time he fell off the car. His attempt to board the train, and his fall therefrom were in reality parts of the same operation— an operation by which the decedent attempted, but unsuccessfully attempted, to attain the status of passenger.

It is true that the policy provides for double indemnity for injuries sustained while the insured is on the platform, steps, or running board of a public conveyance. But the very same clause also provides that the insured is to be a *passenger* on such conveyance. Therefore, if the decedent had failed to reach the status of *passenger* when he fell off the train, his beneficiary is not entitled to recover the double indemnity.

Emphasis upon the "place of safety" rule was given by the Supreme Court of Massachusetts in the case of Merrill v. Eastern R. Co., 139 Mass. 238, 1 N. E. 548, 550, 52 Am. Rep. 705, where the decedent first had been traveling on the engine, but got off at a station and, after the train had started, got on the front platform of the front passenger car. He stood on the step of the platform, facing inward, and, *after the train had gone*

*from a quarter to half a mile,* fell off and was killed. Of such a situation, the Supreme Court of Massachusetts said: "Then, supposing that his start upon the engine did not give a character to his subsequent relation to the defendant, and that the deceased was in the same position as if he had attempted to get on at East Salisbury for the first time, it is clear that when he attempted to get upon the moving train after it had started, he was *outside of any implied invitation* on the defendant's part, and did not at once acquire the rights of a passenger in the hands of a carrier. We may admit that if he had reached a place of safety, and seated himself inside the car, the bailment of his person to the defendant would have been accomplished, and that he would not have been prevented from asserting such rights because of his improper way of getting upon the train. But we think that he could not assert them until he had passed the danger which met him at the threshold, and had put himself in the proper place for the carriage of passengers." See also, Horwitz v. Jefferson County Traction Co. (Tex. Civ. App.) 188 S. W. 26, 28.

The appellee insists that cases involving the liability of a carrier to its passengers should not be regarded as authority in the present litigation, which involves an insurance company. But the reason for the doctrine upon which we are here relying is the same, whether the case involves a carrier or an insurance company; namely, a person acquiring the full status of a passenger is known to occupy an extremely safe situation, while one who is attempting to board a moving train is in a precarious state.

The appellant suggests this reason in its brief, and the appellee has attempted to answer the point by a resort to satire and a quotation from Mark Twain. Nevertheless, this reason for the rule finds its sanction in the law.

Discussing the double indemnity clause in a connection not applicable here, Fuller, in his Accident and Employers' Liability Insurance, c. 4, p. 334, goes on to use language that does recognize the reason for the rule to which we are here adhering: "The theory of this clause is that the interior of a passenger car is a place of exceptional safety, and in view of the slight risk to one seated there, the insurance company can contract to pay a double indemnity in the event of injury or death."

It is true that the learned author was not there discussing a policy containing the terms that form part of the policy in the instant case; but his observations regarding the *reason* for the rule—namely, that a passenger is in an exceptionally safe situation—are in point here. The applicability of the rule itself to the instant case has been established, we believe, by the authorities already cited, which indicate *when* the status of passenger is acquired. Even under the present policy, as we have seen, the insured cannot recover unless he has in fact and in law acquired the status of passenger.

In Fuller's treatise, there is quoted as an annotation to this same chapter 4, at pages 333, 334, the case of Wallace v. Employers' Liability Assur. Corp., 26 Ont. L. Rep. 10, in which the court said: "It is common knowledge that the vast majority of street car accidents occur in connection with entering or leaving the car; injuries to those in or on the cars being limited to the rarer cases of collisions, or the car running off the track."

In Anable v. Fidelity & Casualty Co., 73 N. J. Law, 320, 63 A. 92, the Supreme Court of New Jersey said: "Nor is there any reason discoverable why the contract should not be construed in accordance with its plain language. The risk for which the defendant contracted to pay double insurance, was without doubt regarded as distinctly less hazardous than the single insurance risk. A passenger in a public conveyance who keeps himself within a car, or on a steamboat, is regarded as subjected to the slightest risk; while the act of getting on or off moving trains, involves a considerable degree of peril."

The Court of Errors and Appeals of New Jersey affirmed the foregoing case for the reasons stated in the opinion of the Supreme Court. 74 N. J. Law, 686, 65 A. 1117.

The appellee insists that full force should be given to the words "platform, steps, or running board." In this contention, the appellee is quite correct. But equal force should be given to the words "while a passenger." If the appellee has not brought herself within *all* the conditions precedent to recovery under the policy, she cannot be awarded double indemnity.

For the foregoing reasons, we do not believe that the decedent was a "passenger" at the time he was killed, and that therefore the appellee is not entitled to double indemnity under the policy. The court below should have directed a verdict to that effect.

Accordingly, the judgment is reversed, and the case remanded, with instructions to the District Court to enter a judgment for the appellee in the principal sum of $7,500

instead of $15,000. Interest at 7 per cent. on said sum of $7,500 is to be allowed to the appellee from November 9, 1931.

Judgment reversed and remanded, with instructions.