**Alma K. JOHNSTON**

v.

**The GREYHOUND CORPORATION,**
a body corporate.

**Civ. A. No. 8402.**

United States District Court
D. Maryland, Civil Division.

April 2, 1956.

**552**

Dale L. Jernburg, Jeremiah T. Riley, Washington, D. C., for plaintiff.

Thomas G. Andrew, H. Beale Rollins, Baltimore, Md., Rollins, Smalkin, Weston & Andrew, Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff sues for injuries occurring to her while a passenger in a Greyhound bus, alleged to have been due to the negligent and careless driving of the bus, and the defective and unsafe condition of the bus because of the absence of handholds on the ends of the seats. More particularly the plaintiff alleges that the negligence of the bus driver was in causing a sudden, unexpected and unusual or abnormal stopping of the bus while she was walking forward in the bus shortly after it had started from a stop made to let off and take on passengers. She alleges that as a result she was caused to fall and break her ninth rib on the left side and to have sustained an aggravation of a former injury to the lumbar vertabrae. The defendant's answer denies any negligence on the part of the driver of the bus and also alleges in defense that the injuries to the plaintiff were caused in part by her own contributory negligence. The case has been heard fully on the evidence in court and I have reviewed the material parts of the testimony as reported by the court reporter in connection with the exhibits in the case. My conclusion on the whole evidence is that the plaintiff failed to show by a preponderance of the evidence that there was negligence on the part of the bus driver, or that there was insufficient equipment of the bus for ordinary use by passengers; and that the plaintiff's injuries were also in large part due to her own contributory negligence. The judgment therefore must be entered for the defendant.

The bus was apparently the ordinary type of Greyhound bus used for overland trips. It was in use on the particular occasion as a local or commuter bus

from Washington in the District of Columbia, to Glendale, Maryland, about 25 miles from Washington. Glendale is on what is known as route 50, sometimes called the Defense Highway, between Washington, D. C. and Annapolis, Maryland. The date of the accident was March 18, 1955 and the weather was good and the road dry. The plaintiff's fall occurred at or about a place called Sunnybrook, approximately six miles from the bus terminal in Washington.

The interior arrangement of the bus is that passengers enter by doors opened and closed by the driver at the front end of the bus. The driver is seated on the front platform slightly below the floor level of the passenger portion of the bus. There is a partition behind him which, to a large extent, obscures the view of the driver by the passengers. There is an aisle from the front to the rear of the bus about 18 inches wide with seats on both sides bordering on the aisle, each seat about two feet from the one in front, and accommodating two passengers. The bus has no regular stops on the particular run. It is filled at the terminal but no standees are permitted when the bus leaves there. The bus has no scheduled stops but does stop at various places on the route to pick up and let off passengers. On the late afternoon run the bus leaves the Washington terminal filled with passengers and goes to Glendale, returning empty to Washington. In the morning rush hours the bus leaves the terminal at Washington and goes to Glendale empty and returns to Washington filled with passengers.

The plaintiff boarded the bus at the Washington terminal about 5:30 P.M., March 18, 1955. It made several stops before reaching the particular stop at Sunnybrook where it frequently did stop on such a run both to let off passengers and take them on if they were waiting to board the bus. According to the plaintiff's own testimony she boarded the bus at the Washington terminal and took a seat near the rear end of the bus on the aisle, there being another passenger at the window seat. She says that when the bus stopped at Sunnybrook, about two or three miles from Landover where she lived and intended to leave the bus, the passenger on the window seat beside her desired to alight and she arose to let him out. As there were then some empty seats on the bus near the front end, she started to walk up the aisle toward the front of the bus in order to take a more forward seat. She says that after the bus had stopped at Sunnybrook and started again and while she was still walking forward, the bus suddenly and unexpectedly stopped after it had proceeded only a short distance, possibly about 40 feet from the Sunnybrook stop. Plaintiff states that this sudden and unexpected stopping of the bus, so soon after starting, caused her to fall and strike her chest against the side or metal foot rung of one of the seats, thereby breaking her ninth rib, for which she was hospitalized for several days, and causing her to lose three or four months from her then occupation as a bookkeeper for an insurance company in Washington. She returned to work in September but was forced by the condition of her health to discontinue activity in the following December, and has not resumed gainful occupation since then.

The plaintiff is a woman about 59 years of age of stout, rather heavy build. She had had a serious automobile accident in 1951 by reason of a truck striking her passenger automobile while she was driving. This resulted in a serious injury to her lumbar vertabrae and she made a settlement of her tort claim against the truck for $10,000. She says that she continued her activity thereafter for several years being principally occupied in solicitation for an advertising agency, driving her own automobile on long journeys through various States. She also claims that her fall in the Greyhound bus in 1955 has aggravated her former lumbar vertebrae injury with the result that she is now suffering from sciatica caused by what is medically thought to be an impingement of the cartilaginous discs in the spine against

the sciatic nerve. There was considerable medical testimony along this line but in view of the conclusion reached I do not find it necessary to determine the particular extent of the plaintiff's injuries.

On the question of liability, the testimony of the bus driver is in direct conflict with that of the plaintiff, particularly with regard to the alleged sudden stopping of the bus after it had started again from its stop at Sunnybrook. The testimony of the bus driver was that he did stop at Sunnybrook where some passengers alighted and others boarded the bus; that the start was not in any way unusual but that after the bus had proceeded 30 to 50 feet he heard someone in the bus call out that a woman had fallen and that he then immediately and as quickly as possible stopped the bus. The speed of the bus at the time was not more than ten miles an hour. The bus driver denied explicitly that after starting from Sunnybrook he had stopped again within less than a block of distance to let off or take on passengers, or otherwise unexpectedly. There was no evidence that any passenger actually left the bus or boarded it when the bus driver stopped the bus within half a block from Sunnybrook. The bus driver testified that when he stopped the bus pursuant to the outcry from the rear, the front doors of the bus were closed and that he immediately went back to see what had happened to the passenger, and then finding that she was apparently hurt, he went to the front door of the bus, opened the doors and got out to go to a nearby telephone booth to call for an ambulance; and that while the doors were so open most of the probably 25 passengers then in the bus got out and took another bus to go on to their respective destinations. He did secure the names of four passengers who had seen or heard something of the plaintiff's fall.

One of these passengers, a Mr. Poudrier who lived at Landover, testified to the effect that he was sitting alone in a seat about the middle of the bus on the left side; that the bus had stopped at Sunnybrook and after it had started up, suddenly it stopped again within about 40 or 50 feet and that at that time he observed the plaintiff, who had been going forward in the aisle behind him, fall and hurt herself. This witness remained with the plaintiff for about 15 minutes until an ambulance arrived. He had no conversation with the plaintiff at the time as to just why or how she had fallen. He was not previously acquainted with her. This witness described the stopping of the bus as sudden, unexpected and abrupt and more so than the normal, ordinary stopping of a bus. He says the abrupt stopping caused him, while sitting in a relaxed position, to lunge forward in his seat and nearly strike his head on the back of the seat in front. This witness did not know whether any passengers had gotten on or off the bus at the time of the sudden stopping when the plaintiff fell.

The statements of three other witnesses which had been taken a month or two after the accident were offered in evidence by plaintiff's counsel although neither side produced them as witnesses and their statements were not made subject to cross-examination. The substance of their statements is not greatly different from that of the witness Poudrier who did testify in person subject to cross-examination. They did not see any passenger board or alight from the bus at the time it stopped after leaving Sunnybrook, and it is not clear from their statements whether the plaintiff's fall was in consequence of the stopping at Sunnybrook or after it had started from Sunnybrook. At least three of the witnesses stated that while they were passengers on the bus they saw nothing in the driving of the bus to indicate that the driver was careless or negligent. None of the three witnesses whose statements were read was in any way injured by the sudden stopping of the bus, nor was any passenger in the bus, who was seated at the time, hurt in any way.

■ A controverted issue of fact in the case is whether the plaintiff's fall was caused by a sudden stoppage of the bus after leaving Sunnybrook or whether it was caused by her instability of balance while walking up the aisle at the time of the stop at Sunnybrook. On this point the plaintiff's own evidence is to some extent corroborated by the witness Poudrier, but on weighing it against the evidence of the bus driver I am not able to find that the plaintiff's own version of the time of stopping in relation to her fall is established by a preponderance of the evidence. In considering the preponderance in this connection we must regard the quality of the testimony as well as the mere number of witnesses. In this case I think the testimony of the bus driver is more convincing because it is positive and in accordance with all reasonable probabilities of the operation of the bus, as described by him. Particularly is this so because there is no evidence in the case by any witness for the plaintiff that any passengers did leave or board the bus when it was very quickly stopped after leaving Sunnybrook. If it was so quickly stopped, in a way that perhaps could be adjectivally described as abrupt or abnormal, it was when the driver stopped the bus after the outcry. While it is clear that the bus at some time did stop very shortly after starting from Sunnybrook, the reason for that sudden stopping was, as stated by the driver, the outcry from the rear.

In the driver's report to the bus company regarding the plaintiff's accident he stated under the heading of "Driver's Account Of Accident"—"The lady was getting up to let a man get out and as I was coming to a stop for a passenger to board, this lady fell in the bus and hurt her side". Counsel for the plaintiff argues that this statement is inconsistent with the bus driver's testimony, but I do not find that is so because it is as consistent with plaintiff's fall being due to the stop at Sunnybrook as with a later stop after leaving Sunnybrook. It is also to be noted that the driver did not see the lady fall and did not himself know that she had fallen until he heard the outcry after starting from Sunnybrook when he did quickly stop the bus to see what was the matter. And particularly it must be borne in mind that there was no evidence to show any reason for suddenly stopping the bus after starting from Sunnybrook other than the outcry which caused its quick stoppage.

■ Even if the bus had stopped within a short space after leaving Sunnybrook that of itself would not have been improper or negligent as it was a commuter's bus with no scheduled stops and did from time to time stop to pick up passengers or to let them off. Indeed plaintiff's counsel does not contend that there was negligence in the fact of stopping after leaving Sunnybrook but the basis of his claim is that the stop was so sudden, unexpected and abrupt that it was the manner of stopping rather than the matter of doing so that constituted negligence. This at once leads to a consideration of the applicable law. As the defendant was a common carrier of passengers for hire, it owed to its passengers the highest degree or measure of care commensurate with the nature of its undertaking. And as the jurisdiction of the court is based solely on diversity of citizenship it is clear that the Maryland law must govern this case. There are three Maryland cases more or less in point. They are as follows: Kaufman, by Deutch v. Baltimore Transit Co., 1951, 197 Md. 141, 78 A.2d 464 (opinion by Judge Markell); Przyborowski v. Baltimore Transit Co., 1948, 191 Md. 63, 59 A.2d 687; Brocato v. United Rwys. & Elec. Co., 1916, 129 Md. 572, 99 A. 792. All these cases deal with suits of passengers against the Baltimore Transit Company or its predecessor. While the circumstances are different in the several cases the general effect of all of them is that a plaintiff passenger does not make out a valid case of negligence, based on an alleged sudden start or stop of a bus or trolley car, merely by adjectival descriptions of the nature of the sudden start or stop, in

the absence of some definite, factual incident thereof which makes it so abnormal and extraordinary that it can be legally found to have constituted negligence in operation. Passengers on moving busses, where adequate seats are provided for their safety, must anticipate possible sudden stops or starts in gasoline automobile transportation, especially when the passenger vehicle is not confined to certain trackage, but under present conditions, as in the instant case, must operate over a travelled highway involving much other traffic requiring at times sudden stops to avoid collision with other vehicles. In the absence of direct, actual collision the seats provided for passengers are ordinarily sufficiently safe even if sudden or abnormally quick stoppage is required to avoid traffic mishaps.

I do not find on the whole evidence that the plaintiff's fall was due to negligent operation of the bus by the driver.

I find the proximate cause of the plaintiff's fall was her own lack of proper care in voluntarily leaving her safe seat in the bus to go forward to take another seat while the bus was in motion. It is true, as some of the evidence in this case clearly indicates, that it is not unusual for passengers to move forward on the bus to be nearer the front exit when approaching their destination. Nor would it necessarily be imprudent for most active and physically well persons to make such a move although in doing so they do take some risks of sudden jolts in transportation. In the instant case the plaintiff was neither young nor of average physical activity. She was a woman of 59 years of age, of stout and heavy physique, who in 1951 had sustained a serious injury to her lumbar vertabrae in an automobile accident and who had chronic arthritis. If she had remained seated instead of moving forward in the narrow aisle of the bus while it was in motion, she would have sustained no injury. In other words, her own imprudence in walking forward in a moving bus, subject to the

possibility of unevenness of the motion of the bus was a contributing cause on her part to her fall.

For all these reasons I conclude that the judgment in this case must be entered for the defendant, and the Clerk is instructed to so enter it.