(Opinion published 52 N. W. Rep. 392.)

---

FREDERICK W. STEEG vs. ST. PAUL CITY RY. Co.

Submitted on briefs May 16, 1892. Decided June 10, 1892.

**Carriers of Passengers—Negligence in Starting.**

The servants of a street car company who control the movements of its cars are bound to use due care in starting the same so as to allow passengers a reasonable opportunity to get safely on board, regard being had to the circumstances of each case.

**Evidence.**

Evidence *held* sufficient to warrant the submission of the case to the jury, and to sustain the verdict rendered.

Appeal by defendant, St. Paul City Railway Company, from an order of the District Court of Ramsey County, *Brill*, J., made September 8, 1891, denying its motion for a new trial.

Plaintiff, Frederick W. Steeg, was on November 24, 1890, an electrical engineer in the employ of the Thomson-Houston Electric

Supply Company. He and two men under him had been out doing work, and returning with their tools, took the east bound Selby Avenue cable car at Virginia Avenue. While boarding it, the car was started and plaintiff fell. His collar bone was broken, and he received other injuries. The jury awarded him $1,500 damages. Defendant's contention here was, that there was no evidence to sustain the verdict.

*H. J. Horn,* for appellant.

*O. E. Holman,* for respondent.

VANDERBURGH, J. This action is for damages for the alleged negligent management of a street car by reason of which plaintiff claims to have suffered personal injuries.

The accident occurred while the plaintiff was in the act of getting on, or just after he had got on, to the car, and before he had taken his seat, and he claims that he was thrown off, or caused to slip off, the car, by a sudden and premature movement of the car caused by the carelessness of defendant's servants in charge of it. The accident occurred on the Selby avenue cable line in the city of St. Paul, and on the " grip car," with which was connected a passenger coach or " trailer." The grip car in question was provided with a step or foot board running lengthwise of the car, by means of which passengers could reach the platform at each end of the car or the seats between. On this occasion the plaintiff attempted to reach the platform upon the front end of the car, so as to take an empty seat there. The plaintiff's hands were both incumbered with packages, and his testimony shows that as soon as he stepped upon the footboard the car started, and, feeling his footing insecure, he hastily laid down the packages on the platform, and caught hold of the front post of the grip car, when, through a sudden jerk of the car, he lost his balance, and slipped off, and was dragged a short distance along the side of the car, whereby he received the injuries complained of. The plaintiff testifies that he did not have an opportunity to reach the platform before the car started, and he was unable to save himself from falling off. He is substantiated in the main by other witnesses; but witnesses on the part of the defend-

ant, who observed the accident, testify to a different state of facts, and their evidence is in sharp conflict with that of the plaintiff, and tended to prove that the plaintiff had actually reached the platform, and, after the car was in motion, of his own accord stepped down upon the footboard to arrange his tools, and while so doing slipped and fell off. The question whether the car was started up before the plaintiff had time to get safely on board the car was then one for the jury. It appears that the conductor and the " grip man " who had control of the movements of the train observed plaintiff before and while he was getting on, and knew the circumstances attending his attempt to board the car, and the fact that his hands were full. The question whether they exercised due care in starting and handling the cars to assure his safety was one for the jury. This disposes of the first and most important assignment of error.

The counsel for defendant asked the court to charge the jury that passengers riding on the platforms or steps of a street car assume the additional risk of any accident therefrom. There was no prejudicial error in the court's refusal to give the instruction as asked, because the court had already clearly charged the jury on the subject, and the instruction given was specially pertinent to the evidence presented to the jury. The instruction also asked, that the sudden movement or "jerk" of a street car in starting was not negligence if it necessarily resulted from the appliance of the grip, had no basis in the evidence, as there was no evidence tending to show that it was necessary or usual, and defendant's witnesses denied that it in fact took place in this instance.

The court also instructed the jury that "the train men were bound to allow plaintiff a reasonable time to get safely upon the car, and, the plaintiff having packages in his hands, they were bound to conduct themselves in starting the train in reference to that fact. These trains are not, of course, ordinarily expected to make long stops. But if anything is apparent in the condition of the passenger, so that he would be likely to be thrown or injured by a motion of the car, then proper regard for his safety might require a train to be held in position to avoid it. Care and negligence, in any case, depend upon the circumstances of the particular case. The care,

both by the plaintiff and defendant, must depend largely upon the circumstances."

There was no error in the instruction as given. The defendant, as a common carrier, was legally obliged to exercise extreme diligence and care, and was bound to allow the plaintiff a reasonable time and opportunity to get safely on board, and it was negligence to start the train sooner. The fact that his movements were somewhat incumbered by packages in his hands might reasonably require more delay and care in starting the train in order to assure his safety as in the case of aged or infirm persons. 2 Shear. & R. Neg. § 508.

No further questions in the case require to be noticed.

Order affirmed.