# MARY ALICE PLUMMER

## *vs.*

# WASHINGTON, BALTIMORE.& ANNAPOLIS ELECTRIC R. R. CO.

*Railroads*: *conductors' duties to passengers; escorting to seats.*

Where the conductor of a railroad train finds passengers in the baggage car, and informs them that there are seats for all in one of the passenger coaches, and offers to escort them to a seat, it is not to be construed as an *order* to go to the other coach.
                                                      p. 205

It is not incumbent upon a railroad company to afford a passenger assistance when going from one part of a car to another, unless the passenger is laboring under some known or apparent disability or infirmity, or there are other circumstances requiring special care.            pp. 206, 209

In all actions for damages for negligence, it is the right of the defendant to have the jury confined to the issue as made by the pleadings.                                        p. 205

*Decided November 11th, 1914.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph Addison* and *Aubrey Pearre, Jr.,* (with whom were *Preston S. Cotten* and *Barton, Wilmer & Stewart* on the brief), for the appellant.

*L. Vernon Miller* and *George Weems Williams* (with whom were *Marbury, Gosnell & Williams* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by the appellant to recover for injuries alleged to have been caused by the negligence of the appellee.

The appellant was a passenger on one of the cars of the appellee, and the *narr.* avers that the injury she sustained "was the direct result of the negligence and want of due care of the defendant, its agents, servants and employees in failing to provide proper and adequate accommodations for the plaintiff, in compelling her removal from one car to the other while the train was in motion; in not accompanying her from one car to the other while the car was in motion, and in failing to furnish her proper assistance and attention in the course of her enforced removal from one car to the other car while said train was in motion."

The only evidence in the case reflecting upon the question of negligence is the testimony of the plaintiff and her mother. The defendant was a common carrier of passengers and operated an electric railway between Annapolis and Baltimore City, Maryland, and Washington, D. C. The plaintiff testified that in March, 1913, she and her mother went to the station of the defendant in Annapolis to take a car for Washington, and that while waiting there a car came into the station marked "Washington Limited," which the conductor said was a car for Washington. She and her mother got on the car and a few minutes after they were seated the conductor "came through" and said that the next car "was for Washington," and that car went to Baltimore. They got off the car and entered the next car, and as her mother was about to take a seat in the second car, the conductor announced that that car went to Baltimore and that the next car was for Washington. They then entered the "third car, marked Washington." The conductor, who was standing near the

entrance of the third car next to the second car, said "this way, please," and when the plaintiff and her mother entered the car they found that they were in the baggage compartment. There were several persons standing in the baggage compartment, and the plaintiff says that she and her mother "started in the passenger compartment, but finding the seats in this filled and that it was impossible to get through she stood up in the baggage compartment, and the car started almost as soon as they boarded it." There were about seven people in the baggage compartment and some young men who got on at Annapolis fixed a seat for the plaintiff and her mother on some suit cases. When the car was about half way between Annapolis and Academy Junction the conductor came through the car taking up tickets and said, "Seats for all in the rear car." A lady and her husband started out of the baggage compartment, but the plaintiff remained seated because she did not care to move while the car was going so rapidly. After the conductor had taken up the tickets he turned to the plaintiff and said, "Seats for all in the rear car. I will assist you ladies through to a seat." The plaintiff and her mother then got up, and, preceded by the conductor, started through the aisle of the passenger compartment to the rear car. The plaintiff told her mother to go next to the conductor because she was afraid that as her mother was a much older woman she might fall. The conductor assisted them across the coupling of the cars into the rear car and then left them. The nearest vacant seat in the rear car was the third seat from the rear, and about the time her mother reached this seat and was standing in the aisle holding on to the seat, and the plaintiff, who was following her, had reached the fifth seat from the rear end of the car, the car "went fast around a curve," and the plaintiff was "thrown from" her feet and her knee was injured. The plaintiff further stated that when she got on the car at Annapolis "she was positive there were only three cars;" that when the conductor suggested to her that there were seats in the rear car she told him that she did not care to move" while

the car was in such rapid motion," that she preferred to wait until they got to Academy Junction, that he replied that he would see them safely through to a seat in the rear car and that she then "moved;" that when they started for the rear car she had a small traveling bag, a muff and a mesh bag in her right hand, and that her left hand was free; that there were handles on the seats "for people to grasp" while walking through the aisle, and that she had her hand on the seat when the motion of the car "threw her."

The plaintiff's mother, after stating that they entered the first and second cars and got off because the conductor announced that they were for Baltimore; that when they entered the baggage compartment of the third car they could not get any further because of the crowded condition of the car and aisle, and that they sat down in the baggage compartment on some baggage arranged for them by a young man, further testified as follows: "We were as comfortably seated in there as we could be on the baggage with the other passengers; then the conductor came in there; he was punching tickets and I handed him by ticket and he said, 'Seats in the rear car for everybody'; several passengers started through, but my daughter thought it was best to remain, as the cars were running rapidly and she was afraid I would fall. I got up and held on, just then the conductor returned and said, 'I will assist you ladies to a seat, seats in the rear car for everybody to be seated.' I said why we had better go, she said, 'No,' but then we started, and after getting through this car why he went ahead of me, then he took me by the arm and assisted me across the coupling and then I walked on, holding on as I went through, it was all I could do to keep my feet, thinking she was safely protected by the conductor, I went on. I got to the third seat from the rear, which was the first vacant seat, and caught hold of the seat to keep anybody from getting it as it would be a seat for both of us; I noticed a commotion and turned quickly and she was prostrate in the aisle with her head down on the floor."

At the conclusion of this evidence, and the testimony of a physician, called by the plaintiff, as to the extent of the plaintiff's injury, the case was withdrawn from the jury on the ground that there was no evidence legally sufficient to entitle the plaintiff to recover under the pleadings.

As we have said, the negligence charged in the declaration is (1) the failure of the defendant to provide adequate and proper accommodations for the plaintiff, (2) "compelling her removal from one car to the other, while the train was in motion," (3) "not accompanying her from one car to the other while the car was in motion," and (4) "failing to furnish her proper assistance and attention in the course of her enforced removal from one car to the other while the train was in motion."

It is apparent from the testimony to which we have referred that it is devoid of any evidence tending to sustain the first, second and third assignments of negligence. While the plaintiff says that there were only three cars when she got on the third car at Annapolis, she was manifestly in error as to that, for she and her mother both say that the car started promptly after they entered the baggage compartment. The rear car must, therefore, have been attached at the time the plaintiff entered the baggage compartment or was attached before the train started, for there is no evidence to show that the train stopped before reaching Academy Junction, and if the rear car was attached before the train started from Annapolis the defendant, according to the evidence, had provided ample accommodations for the passengers.

There is no evidence that the plaintiff was compelled to go into the rear car, in the sense that the conductor ordered her to do so. He found the plaintiff and her mother seated on some baggage in the baggage compartment, where no provision was made for the comfort and safety of passengers, and a proper regard for their comfort, if not his duty, required him to announce to them and others in the baggage compartment that there were vacant seats in the rear car. When the plaintiff hesitated to move while the car was in

motion because she was afraid her mother might fall, his offer to assist them or to see them safely to a seat cannot be fairly construed as an *order* to go to the rear car, unless there was something in his manner, not shown by the evidence, to justify such a construction.

In regard to the third ground of complaint, it is only necessary to say that the evidence shows that the conductor did accompany the plaintiff from the car in which she and her mother were seated to the rear car, and if we construe the words "enforced removal" in the fourth assignment of negligence, as referring to the statements of the conductor, it is disposed of by what we have already said in regard to the second, and there was no evidence legally sufficient under the pleadings to warrant a verdict for the plaintiff.   In the case of *Western Maryland Railroad Co.* v. *Shirk,* 95 Md. 637, CHIEF JUDGE McSHERRY said: "The declaration, as we have pointed out, counted on negligence in respect to the car axle and in respect to nothing else, and the issue thus made should not have been amplified or enlarged by the modification annexed to those prayers."   In the case of *Fletcher* v. *Dixon,* 107 Md. 420, CHIEF JUDGE BOYD said: "It is a principle of universal application in actions at law, that it is not upon the evidence alone, but upon the pleadings, and the evidence applicable to the pleadings, that a plaintiff can recover in any case," and in the later case of *M. & M. Trans. Co.* v. *Hazelton,* 108 Md. 564, JUDGE BRISCOE, in applying the same rule, said: "The defendant's prayers are based upon the insufficiency of the evidence to prove that the death of Hazelton was occasioned by the negligence of the defendant as alleged in the pleadings.   It is well settled that the defendant had the undoubted right to have the jury confined to the issue made by the pleadings."

If we construe the *narr.* to mean that the plaintiff was forced to go from one car to the other while the train was moving in order to find a safe and comfortable seat, she cannot complain if it was the result of her having voluntarily elected to remain in the baggage compartment rather than

attempt to find a seat in the rear car, and the *narr.* does not allege that the defendant was negligent in not having some one to clear the aisle of the car in which she entered in order that she might pass through to the rear car before the train started, even if its failure to do so was negligence.

But the *narr.* avers the defendant was negligent in failing to furnish the plaintiff proper "assistance and attention" while she was going "from one car to the other." The plaintiff was a young woman, and there was nothing to suggest to the conductor that she needed special care or assistance. The only anxiety expressed by the plaintiff referred to her mother, and the conductor naturally assumed that that had reference to her crossing the platforms or coupling of the cars. He helped them across the coupling and into the rear car, and the plaintiff's mother went safely down the aisle to her seat. If he had thought it necessary to offer any further assistance he would naturally have accompanied the plaintiff's mother to a seat. But can it be said that due care required him to do so, or to assist the plaintiff from one end of the car to the other? Suppose he had found them standing in the aisle of the rear car when there were vacant seats in that car, would it have been his duty to assist them to a seat in the absence of some infirmity that was apparent or of which he had knowledge? The rule in this State is that common carriers are required to exercise the greatest degree of care for the safety of passengers, but we know of no case that goes to the extent of holding that it is incumbent upon the carrier to afford them assistance going from one part of a moving car to another, unless the passenger is laboring under some apparent or known infirmity or disability, or there are other circumstances requiring special care. In 6 *Cyc.* 611, it is said: "Nor in general is there any duty to assist a passenger in entering or alighting from the train or other conveyance, unless there is some unusual danger or difficulty arising from the place or means afforded for alighting, or the passenger is, to the knowledge of the servants of the carrier, infirm or under some disability," and it is stated on page 613 of the

same volume that "The train may be started after a passenger has got on board the car, and before he has reached a seat, unless there is some reason to apprehend danger in so doing, or the movement is in a negligent manner." The same rule is stated in 2 *Hutchinson on Carriers* (3rd Ed.), secs. 1111, 1112 and 1127; 2 *Sherman & Redfield on Negligence* (5th Ed.), secs. 508 and 510; and *Yarnell* v. *Kansas City, Etc., R. Co.,* 18 L. R. A. 599.

Counsel for the appellant insist that the plaintiff in going from the baggage compartment to the rear car acted upon the invitation or direction of the conductor, and their contention, as stated in their brief, is that "Where a passenger is invited or directed by the conductor or other official in charge of the train, to do a thing which is not obviously dangerous, the passenger is justified in doing it, and if in doing so an injury ensues, the railway company is liable because of its negligence, through the invitation or command of its agent." In support of this contention, as applicable to the facts of this case, the appellant cites the cases of *B. & O. R. R. Co.* v. *Leapley,* 65 Md. 571; *Topp* v. *United Rys. Co.,* 99 Md. 630, *B. & O. R. R. Co.* v. *Jean,* 98 Md. 546. In *B. & O. R. R. Co.* v. *Leapley,* the defendant instead of stopping the train at the platform, stopped it about three hundred feet beyond the platform, and the conductor told the plaintiff, "who was a large woman, some five months advanced in pregnancy" and accompanied by two small children, to jump from the train, which she did with the youngest child in her arms, and was injured. The Court held that the plaintiff's ticket "gave her the right to be put off at the" platform; that the failure of the defendant "to put the plaintiff off at the usual platform" was an act of negligence, and that her act in jumping off in obedience to the order of the conductor "did not constitute contributory negligence." In *Topp's case* the defendant failed to stop the car at the platform, and the Court held that the defendant was guilty of negligence in inviting the plaintiff to get off at an unsafe place. In *Jean's case* the plaintiff got on the bottom step of the car when it was dark

for the purpose of leaving the train and was injured, and the Court held that it was for the jury to say whether he was misled by the announcement of the station by the conductor and believed that the station had been reached. All of the other cases cited by the appellant, except the case of *Chicago City Ry. Co.* v. *McCaughna*, 74 N. E. 819, to which we shall refer later, deal with the duty of the employees of a carrier to assist passengers known to be blind, sick or infirm. In *McCaughna's case* the plaintiff was riding on the platform of a car in which there were no vacant seats. The conductor told her that she could go through the car and across the platform to the car ahead where she would find a seat. The train was then approaching a point where the defendant's tracks made a sharp turn into another street. The Supreme Court of Illinois, in disposing of the question of the defendant's negligence, said: "The two ladies then started through the car, Mrs. Froelich being in the lead. When they got to the front platform, Mrs. Frolich crossed over and the appellee followed, and about the time the appellee was stepping from one car to the other the car was swinging around the corner at Twenty-second street. Other witnesses confirmed the testimony of the above named that the car gave a sudden jerk and appellee was thrown from the car and injured substantially as alleged in the declaration. The evidence shows that the conductor knew that the car would swing around this corner, and knew that the car was near the corner when he told appellee to walk through the car. It was, therefore, his duty to inform her of the danger of the car making the sudden turn, or to have so controlled the car that there would have been no danger in her passing from one car to the other."

In each of the two Maryland cases first referred to the defendant was guilty of negligence in failing to stop the car at a safe place for the plaintiff to leave the car. In *Jean's case* there was evidence tending to show that the plaintiff was misled and induced to take a dangerous position by the announcement of the conductor, and in *McCaughna's case* the negligence of the defendant consisted in its failure to

PLUMMER vs. W., B. & A. ELEC. R. R. CO. 209

Md.]                    Opinion of the Court.

warn the plaintiff that the car was approaching a sharp curve in the defendant's tracks. In the latter case there was no intimation that the conductor was negligent in telling the plaintiff she could go from one car to the other while the train was in motion, notwithstanding she was required to cross the platform, or that he was negligent in not assisting her. We are not to be understood, however, as suggesting that due care did not require the conductor in this case to assist the plaintiff and her mother when crossing the platforms of the cars, for here he did help them over the platforms and the plaintiff was not injured until after she entered the rear car.

In each of the cases relied on by the appellant there was a distinct act of negligence on the part of the defendant. In the case at bar the only averment in the declaration, under the most liberal construction of the pleadings, which the evidence tends to support, is the charge that the defendant failed to furnish the plaintiff assistance while she was going from one car to the other. There is no evidence to show that the speed of the train was excessive or unusual; that the curve was a sharp curve, or that the plaintiff was weak, sick or enfeebled, and unless we are to hold that ordinarily due care requires a carrier to assist passengers to move from one part of a car to another while the car is in motion in order to secure a seat, there was no evidence of negligence on the part of the defendant. No authority has been cited in support of so strict a rule, and such a requirement would not only impose an unnecessary burden upon common carriers, but would greatly interfere with the freedom and comfort of passengers.

*Judgment affirmed, with costs to the appellee.*