# JOSEPHINE BROCATO

*vs.*

# THE UNITED RAILWAYS AND ELECTRIC COM-PANY OF BALTIMORE.

*Electric cars: injury to passenger; negligence; ordinary move-ment of cars.*

In an action of damages for injuries received, by a passenger on an electric car, the mere ordinary movements to which such cars are subject, and the fact that they do not run with perfect smoothness, do not justify the inference of negligence or carelessness on the part of those in charge.          p. 576

*Decided January 9th, 1916.*

Appeal from the Baltimore City Court.   (STANTON, J.)

The facts are stated in the opinion of the Court.

  The case was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*James J. Lindsay,* for the appellant.

*Wallis Giffen,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The action in this case was brought by the appellant to recover for personal injuries resulting, as it is alleged, from a fall while riding in a car of the appellee.

At the conclusion of the plaintiff's testimony a prayer was granted by the Court, at the instance of the defendant, withdrawing the case from the jury for a want of legally sufficient evidence entitling the plaintiff to recover.

The plaintiff, Josephine Brocato, with three others, Joseph Sabatina, Nick Defatta and her son, Samuel Brocato, boarded a car of the defendant company at the corner of Garrison and Piedmont avenues.  Joseph Sabatina was the first to board the car, the plaintiff immediately followed, then came Defatta and following him Samuel Brocato.  When Sabatina was in the car and the plaintiff was in the act of passing through the door of the car, the car started, and she fell, as she says, as the result of the "jerk" in starting, receiving the injuries complained of.  As she expresses it, "just as I put my foot in (the car) the jerk of the car threw me." She was then asked: "When you went to step from the platform inside of the car did you have hold of anything?" Ans., "No, just as I tried to get in the jerk threw me." At this time Defatta was behind her on the platform of the car, and the son was in the act of boarding it.  The conductor, as Sabatina testified, was at such time in the car.  Sabatina when asked: "Did the car give a jerk that made you fall?" answered, "No, because I was holding myself." "Q. Did it make anybody else fall in the car?  A. The others did not fall because the others did not get on.  Q. Were there not other people on the back platform?  A. I don't remember.  Q. Did not Mr. Defatta and Mrs. Brocato's son get on after you did?  A. Yes, he was behind my sister.  Q. Did either of them fall? A. No, sir; it was only when she made her step over this platform that she fell." Defatta testified that "just as soon as he got on then the car jerked hard," that at such time he was on the platform of the car and the plaintiff in front of

him and "just as she caught her foot on the step that leads into the car from the platform the car gave a jerk and she fell down and shoved me back."

This is, in substance, all the testimony in relation to the falling of the plaintiff and conduct of the company in the operation of its car at such time

If there was any negligence on the part of the company it must be found in the starting of the car before the plaintiff was in a place of safety, or in the defendant's negligent operation of the car resulting in the "jerk" complained of.

It is true the plaintiff had not entered the car, that is, had not passed through the door of the car, and was not seated before the car was started, but was standing on the platform of the car before the open door, her foot raised in the act of stepping into the car.

She, at such time, was not supporting herself in any way and while in this position she fell, as she says, from the motion of the car in starting.

It can hardly be said that these facts, unassociated with any unusual circumstances or conditions, show negligence on the part of the company in starting the car while the plaintiff was still upon the platform and before she was seated.

In *Martin* v. *Boston E. R. W. Co.*, 216 Mass. 361; 103 N. E. 828, as in the case before us, the only question in controversy was whether the trial judge should have ruled as a matter of law that the conductor was not negligent as to the time of starting the car, instead of leaving that issue to the jury as a question of fact.

In that case the plaintiff's married daughter and the latter's little boy boarded the rear vestibule and entered the car. The plaintiff followed as far as the vestibule, with a suit case, but was delayed from getting into the body of the car by an intervening woman passenger. Leaving her suit case in the vestibule, the plaintiff started to enter the car, the floor of which was one step higher than the floor of the rear platform, but before she had time to enter the door or to get

hold of anything the car started suddenly, and she fell back into the rear part of the vestibule.

The Court in applying the law of Massachusetts to the facts of the case and in affirming the judgment of the Court below said: "It is settled law in this commonwealth that under ordinary circumstances it is not negligence for a conductor to give the starting signal after the passenger is fully and fairly on the car. *Sauvan* v. *Citizens' Electric Street Railway,* 197 Mass. 176, 83 N. E. 405. In reaching that conclusion the Court recognized not only the imperative demand by the fact known to experience, that ordinarily it is not necessary for the safety of a passenger in normal physical condition that the car should be delayed until he is seated." *Saunders* v. *B. E. R. W. Co.,* 216 Mass. 355—103 N. E. 779.

The law as stated in *Martin* v. *B. El. R. W. Co., supra,* is also the law of this State, for it was said by us in *Plummer* v. *W., B. & A. Elec. R. W. Co.,* 124 Md. 206, that: * * * "We know of no case that goes to the extent of holding that it is incumbent upon the carrier to afford them (passengers) assistance going from one part of a moving car to another, unless the passenger is laboring under some apparent or known infirmity or disability, or there are other circumstances requiring special care. In 6 *Cyc.* 611, it is said: 'Nor in general is there any duty to assist a passenger in entering or alighting from the train or other conveyance, unless there is some unusual danger or difficulty arising from the place or means afforded for alighting, or the passenger is, to the knowledge of the servants of the carrier, infirm or under some disability,' and it is stated on page 613 of the same volume that 'the train may be started after a passenger has got on board the car, and before he has reached a seat, unless there is some reason to apprehend danger in so doing, or the movement is in a negligent manner."

We have already said "electric cars do not run perfectly smoothly, and that there are certain movements to which they are subject, and which do not justify the inference of

negligence or carelessness on the part of those in charge."
*Dawson* v. *Maryland Electric Railway,* 119 Md. 376; *Callis*
v. *United Railway,* 128 Md. 406; *The Hagerstown and Fred-
erick R. W. Co.* v. *Cunningham,* 129 Md. 318, and *United
Railway Co.* v. *Maggie Phillips,* 129 Md. 328.

The car had stopped to permit the parties to board it. The
jerk complained of was the motion in starting the car. It is
not shown that this motion was unusual or extraordinary.
No one else fell as the result of it, although Sabatina was
standing in the car and Defatta on the platform behind the
plaintiff and neither of them fell. Both of them were at
such time supporting themselves while the plaintiff was not,.
and the cause of her fall may be explained by her failure to
do so.

It is not shown from the facts stated that the motion of
the car spoken of as a "jerk" was an unusual or extraordinary
motion showing any negligent operation of the car.

It is true, one of the witnesses said the car "jerked hard"
but this expression alone, considered in connection with the
facts of the case, can not be regarded as having sufficient
probative force to go to the jury as tending to show that the
"jerk" was unusual or extraordinary. The Court we think
acted properly in taking the case from the jury.

> *Judgment affirmed, with the · cost to the
> appellee.*