PRZYBOROWSKI *v.* BALTIMORE TRANSIT CO.
SAME *v.* SAME

[No. 184, October Term, 1947.]

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■

Decided June 17, 1948.

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Ellis M. Fell* and *Edward Pierson,* with whom were
*Benjamin B. Cooper* and *Pierson & Pierson* on the brief,
for the appellants.

*James J. Lindsay,* with whom was *Philip S. Ball* on
the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Mrs. Przyborowski was injured while a passenger
on a trackless trolley operated by the appellee. She
brought an action for damages, and her husband

brought a companion suit to recover for loss of services and expenses. Both cases were heard before the court and a jury in the Superior Court of Baltimore City. At the conclusion of the plaintiff's case the court granted prayers for directed verdicts in favor of the defendant. The cases come here on appeal from judgments entered upon those verdicts.

On June 7, 1946, Mrs. Przyborowski, a married woman 49 years of age, in apparent good health and weighing some 154 pounds, rode to the Broadway Market on a trackless trolley. She paid her fare and received a "return slip", which entitled her to a reduced fare for a return trip. After completing her purchase, three pounds of fish, she boarded a trackless trolley at Eastern Avenue and Ann Street. She put her fare in the farebox and handed the "return slip" to the operator. However, the slip fluttered to the floor, and she stooped over to pick it up. She testified that when the slip fell the operator gave her "a very nasty look" and "mumbled something"; she said she was sorry; the trolley "started with a very fast jerk", just as "I had the slip in my hand", and "threw me on the right side". Just how this could cause her to fall on her right side is not made clear. There was testimony that she had received a permanent injury to her right side in a previous accident, for which she recovered damages. She further testified: "I stooped down on both my knees"; the operator "had seen me stooping down to pick up the slip" before he started.

This was the only testimony as to how the accident occurred. There was no testimony that any other passenger was unbalanced by the starting motion. A photograph was introduced showing the operator's seat on the left front of the trolley, the farebox to his right, opposite the folding entrance doors, a horizontal metal bar between the farebox and the door, and two upright metal bars on each side in front of the front longitudinal seats. One of these bars is located immediately behind and to the right of the operator's seat. Thus the ap-

pellant had within reach ample means to support herself. There was no evidence that she had hold of anything when the car started.

In the case of *Brocato v. United Rys. & Electric Co.*, 129 Md. 572, 99 A. 792, there was testimony that the plaintiff sustained a fall, while stepping from the back platform into the car, due to a "jerk of the car" in starting. The car "jerked hard" in starting and threw her down. This court said: "If there was any negligence on the part of the company it must be found in the starting of the car before the plaintiff was in a place of safety, or in the defendant's negligent operation of the car resulting in the 'jerk' complained of." In sustaining a directed verdict, this court said that after a passenger is on board, it is not incumbent upon a carrier to wait until the passenger has reached a seat before starting, or to afford assistance to a passenger, not laboring under some apparent infirmity or disability, citing *Plummer v. Washington B. & A. Electric R. Co.*, 124 Md. 200, 206, 92 A. 536, and *Dawson v. Maryland Electric Ry.*, 119 Md. 373, 376, 86 A. 1041. It was also said that "electric cars do not run perfectly smoothly" and "there are certain movements to which they are subject, and which do not justify the inference of negligence or carelessness on the part of those in charge. * * * The jerk complained of was the motion in starting the car. It is not shown that this motion was unusual or extraordinary. * * * the cause of her fall may be explained by her failure to [support herself.]" The case of *Grinath v. Baltimore & Bel Air Electric R. Co.*, 145 Md. 290, 125 A. 604, relied upon by the appellant, is distinguishable because in that case there was an abnormal motion of the car admittedly due to a defective condition of the operating mechanism.

The appellant contends, however, that even if the trolley started in a normal manner, and that she was at fault in assuming a stooping position without taking hold of the bars provided for that purpose, the operator was negligent in starting the trolley after he had seen

her in a stooping position. We think the fallacy in this argument is that it assumes a basis in the testimony for the application of the doctrine of "last clear chance". We think there is no such basis in fact. The actions of the passenger in stooping and the operator in starting were, if not simultaneous, at least concurrent. Before starting, the operator would naturally close the doors and direct his attention to the front, not look over his right shoulder. If, as the appellant says, he had seen her in the act of stooping, he might well have assumed that she had regained an upright position, or that she had supported herself by the bars provided. Nor can we say that a stooping position *per se* is such a position of peril as to charge the operator with the duty of keeping the trolley stationary. We cannot assume that a person in that position is more likely to fall than one in an upright position.

In any event the cases seem to hold that after a passenger is fairly aboard, an operator may resume his ordinary duties as to the vehicle without further concern with the movements of passengers within the car. Conversely, it is the duty of passengers, once on board, to protect themselves against the normal motions of the vehicle incident to public transportation. If there are exceptions to these general rules, we think the appellant has not brought herself within them. We think the trial court was correct in directing verdicts for the defendant.

*Judgments affirmed, with costs.*

MARBURY, Chief Judge (dissenting).

I am unable to agree that there was not enough evidence in this case to justify its submission to the jury. I therefore dissent from the opinion of the majority of the Court.

Judge GRASON authorizes me to say that he concurs in this dissent.