## MILLER v. ROBINSON

[No. 118, September Term, 1965.]

*Decided February 8, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Aaron W. Shapiro* for appellant.

*H. Donald Schwaab,* with whom was *William J. Evans* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

On July 10, 1962, Arnold R. Miller, plaintiff-appellant, joined William Robinson, defendant-appellee, at the Turf Valley Country Club, for a round of golf, the appellant having accepted an invitation by the appellee to be a passenger in the latter's rented golf cart. Both parties teed off at the second hole, with Mliler's ball going to the right side of the fairway and Robinson's ball

slicing to the left (Robinson is left handed) and coming to rest at the greater distance from the elusive green. The two players got into the cart and Mr. Robinson drove along the golf cart path, which is on the right side of the fairway, and then made a left turn off the path so as to go in the general direction of his ball. The force of the turn threw the passenger, Miller, out of the cart, and as a result his left arm was broken. Miller instituted suit in the Superior Court of Baltimore City, alleging in his declaration that the injury sustained by him was caused by the defendant Robinson's excessive speed in driving the cart, failure on the part of the driver to keep the cart under proper control, and his failure to warn the passenger when he was going to make the turn. A trial was held before Chief Judge Manley, sitting without a jury, and at the conclusion of the case the judge rendered a verdict in favor of the defendant-appellee. Judge Manley said in his oral opinion that he found from a consideration of all of the evidence that the plaintiff had not shown the defendant to be guilty of primary negligence and thus could not recover; and, in any event, even if primary negligence had been shown, the evidence revealed that the plaintiff was contributorily negligent and had assumed the risk of such an accident.

At the trial the plaintiff testified that "suddenly Bill [defendant] made a very sharp turn to the left, and I just flew out of the cart," and later on cross examination the witness reiterated: "Now, for some reason, Bill suddenly made a left turn to go down, apparently, to where his ball was." Mr. Miller also testified that the driver had given him no warning that he was about to make the left turn, but admitted that it "was not usual" for the operator of a golf cart to warn his passenger that he was going to turn. Parenthetically it may be observed that a left turn can scarcely be made surreptitiously by a driver of a golf cart such as the one here involved, since the steering mechanism is in the center of the cart, between the driver and his passenger, and to make a turn to the left one or both hands of the operator must grasp the steering bar or tiller and make a counter-clockwise thrust. The plaintiff further testified that he knew that the defendant's ball was on the left side of the fairway, was the furthest from the green, and that under normal

golfing custom the ball furthest from the green would be the one first hit. The defendant testified that he did not see anything unusual about this particular left turn but that he could not recall specifically in what manner the turn had been made. There was no evidence that the cart was driven at other than a prudent rate of speed.

Robinson's rented golf cart was a three-wheeled vehicle, which had one seat thirty-seven inches long and twenty inches wide running the whole width of the cart. There were two individual backs to the seat, each sixteen inches wide and twelve inches high, one behind the driver and one in back of the passenger. The sides of the cart were open except for an armrest on each side which was six and three-quarters inches in length. Pictures of the vehicle introduced into evidence by the plaintiff-appellant indicated that the armrest would normally give little lateral support to a passenger, since it appeared to be designed as an elbow rest and not as something to clutch to prevent one from falling from the cart. Miller testified that at the time of the accident to the best of his knowledge he was holding on to the armrest of the vehicle with his right hand. Testimony revealed that the most practical manner for a passenger to avert being thrown out of such a golf cart was to place his left arm around the backrest and cushion behind the driver, and hold on there. However, the plaintiff testified that he did not recall holding on in this manner and admitted that he knew, at the time of the accident, that it was easy to fall out of the golf cart. In fact, he testified to an earlier accident in which he, as an operator of a golf cart, had a passenger thrown from his cart when he made a turn.

On this appeal the appellant's contentions are: (1) that the trial court was clearly erroneous in failing to find the existence of primary negligence from the evidence presented, (2) that the trial judge was clearly erroneous in finding from the facts that the plaintiff by his own negligence had contributed to his injury; and (3) that the trial judge was clearly erroneous in finding that the doctrine of assumption of risk was applicable.

In our view of the case it is only necessary that we consider the appellant's contention as to primary negligence because we think the trial judge was correct in finding no primary negli-

gence and in its absence we need not consider his last two contentions. The only evidence in regard to primary negligence offered by the appellant was his own testimony which characterized or described as "sharp" and "suddenly" the manner in which the appellee turned the vehicle to the left. Although this is the first case to reach this Court involving the alleged negligent operation of a golf cart, we think that the governing principle in ascertaining whether the trial court was clearly erroneous in failing to find primary negligence has already been enunciated in those cases involving common carriers where the only evidence of negligence was provided by the plaintiffs' own descriptions or characterizations of the manner in which the public carrier made certain movements which caused a plaintiff's injury. Illustrative of those cases is *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 146, 78 A. 2d 464, in which there was testimony that a street car gave a "sudden, terrific, and unusually hard" jerk. Regarding whether such evidence justified an inference of negligence, in *Kaufman*, Judge Markell, speaking for this Court, said: "Such an inference must be drawn from facts, not from adjectives or other words used by witnesses to characterize the movement, *e.g.*, in the instant case, 'terrific jolt', 'very terrbile—very severe jerk or jolt', 'unusually hard jerk'. Cf. *Herholtz v. West Penn. Rys. Co.*, 362 Pa. 501, 66 A. 2d 839." Other Maryland cases which refer to the weakness of adjectival generalizations as the basis for inference of negligence are: *Sunthimer v. Balto. Transit Co.*, 217 Md. 52, 141 A. 2d 527; *Smith v. Baltimore Transit Co.*, 211 Md. 529, 128 A. 2d 413; *Jones v. Baltimore Transit Co.*, 211 Md. 423, 127 A. 2d 649; *Przyborowski v. Balto. Transit Co.*, 191 Md. 63, 59 A. 2d 687; *Brocato v. United Rwys. & E. Co.*, 129 Md. 572, 99 Atl. 792.

Judge Manley in his oral opinion cited *inter alia* the federal case of *Johnston v. Greyhound Corporation* (D. C. Md. 1956), 139 F. Supp. 551. In *Johnston* the plaintiff, a passenger on one of the defendant's buses claimed a sudden, extraordinary stop as the cause of his injury. Judge Chesnut reviewing the applicable Maryland law said at 555-56:

"While the circumstances are different in the several cases the general effect of all of them is that a plain-

tiff passenger does not make out a valid case of negligence, based on an alleged sudden start or stop of a bus or trolley car, merely by adjectival descriptions of the nature of the sudden start or stop, in the absence of some definite, factual incident thereof which makes it so abnormal and extraordinary that it can be legally found to have constituted negligence in operation."

In the instant case, where the duty of the defendant to the plaintiff was far less than in common carrier cases, the adjectival characterization of the manner of operating the golf cart alone was insufficient to authorize the trial judge to infer primary negligence and thus he was correct in entering a judgment in favor of the defendant.

*Judgment affirmed, with costs.*