# CAROLINA COACH COMPANY *v.* JUANITA P. BRADLEY

[No. 322, September Term, 1972.]

*Decided February 1, 1973.*

The cause was argued before MENCHINE, POWERS and SCANLAN, JJ.

*Patrick L. Rogan, Jr.,* with whom were *Richardson, Rogan & Anderson* on the brief, for appellant.

No brief filed on behalf of appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellant, Carolina Coach Company, has appealed from a judgment, awarding damages against it and in favor of the appellee, Juanita P. Bradley, in the amount of $13,532.52, in an action for personal injuries following a jury trial in the Circuit Court for Dorchester County, Judge C. Burnam Mace presiding. The question presented is whether the trial court erred in denying appellant's motion for a directed verdict which timely raised the issue of the sufficiency of the evidence to show any negligence on the part of the appellant.

On September 13, 1968, at approximately 7:30 p.m., Juanita P. Bradley boarded one of the appellant's buses at Glen Burnie to return to her home in Vienna, Maryland. The bus was fully loaded with passengers when the appellee went aboard. The bus stopped at Queenstown, Maryland, a rest stop where all the passengers alighted. Queenstown was the final destination for a number of

passengers. The appellee was among the last of the passengers to re-board the bus as it prepared to depart from Queenstown. She first went to the rear of the bus and re-occupied the seat in which she had ridden from Glen Burnie.

The bus driver was the last person to re-board the vehicle at Queenstown. He sat down, closed the door and extinguished the overhead lights. Shortly after the driver had resumed his seat, but before he had actually started the bus in motion, Mrs. Bradley moved toward the middle of the bus in order to take a vacant seat. The appellee did not advise the driver that she was changing seats. She had started her movement toward her new seat before the driver turned off the overhead lights, but reached the seat after they had been extinguished. Just as she was ready to sit down, the bus started forward and appellee sat down hard on a coke bottle which was on the vacant seat.

After Mrs. Bradley sat down on the coke bottle, she noticed other coke bottles rolling on the floor under the seats. She placed the bottle on which she had sat under her seat. The appellee first told the driver about sitting on the coke bottle as she neared her final destination. The driver then picked up the coke bottles which were on the floor.

Medical testimony indicated that the appellee had suffered a fractured coccyx bone as a result of the accident. The bone was removed by surgery.

At the conclusion of the appellee's case, the appellant filed a motion for a directed verdict, claiming (1) that there was no evidence showing either actual or constructive notice on the part of the carrier of the presence of the coke bottle, and (2) that there was no evidence sufficient to prove negligence. The trial court reserved ruling on the motion. It was renewed at the conclusion of the evidence and denied.

In deciding whether the appellant's motion for a directed verdict should have been granted, we must "con-

sider the evidence, together with all reasonable and legitimate inferences which may be deduced therefrom, in the light most favorable to the plaintiff." *Stoskin v. Prensky,* 256 Md. 707, 709, 262 A. 2d 48 (1970). Accordingly, for the purpose of this opinion, we have adopted appellee's version of the accident. *Id.* Moreover, in our review of this appeal, we also recognize that the appellant is a common carrier of whom "the law requires the highest degree of care which is consistent with the nature of [its] undertaking." *Brooks v. Sun Cab Co., Inc.,* 208 Md. 236, 242, 117 A. 2d 554 (1955). Nevertheless, we conclude, for the reasons we now state, that the trial court erred in submitting this case to the jury. There was insufficient evidence to serve as a proper basis for the jury to conclude that the appellant negligently breached any duty of care which it owed Mrs. Bradley.

The only evidence in the record which even arguably might be considered as tending to show negligence on the part of the appellant-carrier consists solely of the appellee's testimony that as she was ready to sit down in the vacant seat in the middle of the bus, towards which she had moved as the bus was departing Queenstown, "the bus started suddenly, throwing me back and I hit a hard object," *i.e.,* the coke bottle on the vacant seat. This evidence was insufficient to carry the case to the jury.

With respect to the sudden starting of the bus, the trial judge recognized that this particular fact, by itself, would not establish the breach of any duty of due care which the carrier owed the appellee when he instructed the jury that:

> "*You are advised that once a passenger is fairly on board, a bus operator may resume his ordinary duties as to the vehicle without further concern with the movements of the passengers within the bus. After a passenger is on board the bus, it is not incumbent upon the operator to wait until the passenger is seated before start-*

*ing. This does not mean, however, that the bus driver would be excused if there was an unusually sudden quick start,* which, of course, would be brought to your attention as a result of the testimony that there was an unusual jerk or start which affected the passengers on this bus." (emphasis added).

However, in this case there was *no* evidence of "an unusually sudden quick start" of the bus and the trial court erred in permitting the jury to consider that issue at all.

In Maryland, a bus driver is not required to wait until his passengers are seated before starting the bus in operation, unless the passenger labors under some apparent infirmity or disability. *Przyborowski v. Baltimore Transit Co.,* 191 Md. 63, 66, 59 A. 2d 687 (1948) ; *Brocato v. United Railways & Electric Co. of Baltimore,* 129 Md. 572, 99 A. 792 (1917). The evidence showed only that the appellee was 57 years of age at the time of the accident; there is no suggestion that she manifested any physical infirmity or disability of which the driver should have been aware.

Next, there was no evidence offered by the appellee to show that the start of the bus as it departed Queenstown was unusual, abnormal or extraordinary. In this State, a passenger cannot make out a valid case of negligence, based on the alleged sudden start or stop of a bus, "merely by adjectival description of the nature of the sudden start or stop, in the absence of some definite factual incident thereof which makes it so abnormal and extraordinary that it can legally be found to have constituted negligence of operation." *Johnston v. Greyhound Corp.,* 139 F. Supp. 551, 555 (D. Md. 1956) ; *Kaufman v. Baltimore Transit Co.,* 197 Md. 141, 78 A. 2d 464 (1951). The appellee's bare statement that the bus started up suddenly was unaccompanied by any *factual* evidence that the movement of the bus was "so unusually violent or sudden as to justify an inference of negligence." *Id.* at 146.

Turning to the presence of the coke bottle on the bus seat, we find the record barren of evidence of negligence on the part of the carrier. Here again, the trial court charged the jury on the abstract issue of knowledge, actual or constructive, on the part of the carrier when it should not even have allowed the jury to consider that issue at all, since no evidence had been introduced by the appellee to show that the carrier knew, or by the exercise of due care, should have known of the presence of the bottle. Indeed, the record is totally devoid of evidence as to: (1) how long the bottle had been on the seat; (2) who might have placed it there; (3) whether the driver knew, or by the exercise of due care, should have known of its presence on the seat; (4) whether the driver had inspected the seats sometime during the Queenstown rest stop.

Under such facts, the law is clear. The leading decision on the point is *Lusby v. Baltimore Transit Co.,* 195 Md. 118, 72 A. 2d 754 (1950). That case involved a fall sustained while alighting from a bus. The plaintiff claimed that the fall was caused by spit or grease on the bus floor. The trial court had sustained the defendant's demurrer without leave to amend. In *Lusby,* the Court of Appeals, after reviewing the Maryland precedents regarding the duty of common carriers to keep their conveyances free of dangerous objects, affirmed the judgment below, holding:

> " 'The Railroad Company cannot be charged with the negligence of a passenger, and its only negligence in such a case is in allowing the obstruction to remain there after notice, or after it should have had notice, if due care had been exercised.'
>
> "It has been held that in the case of a foreign substance in the aisle or on the floor of a conveyance 'the *plaintiff must show that the foreign substance was placed there by an employee of the carrier or that the employee knew, or by*

*the exercise of proper care and diligence should have known of the presence of such foreign substance and failed to remove it.'* " 195 Md. at 125 (emphasis added).

As stated, there was no evidence that the bus driver actually knew that the coke bottle was on the seat when Mrs. Bradley sat down. Nor was there any evidence to show that the bus driver, by the exercise of proper care and diligence, should have known of the bottle's presence. He could have made an inspection some time during the stop at Queenstown and the bottle still could have been placed in the seat after he had returned to his driver's position in the bus. "Under such a state of facts innumerable possibilities suggest themselves." *Southwest Greyhound Lines v. Smith,* 277 P. 2d 157, 160 (Okla. 1954). In the case cited, the Supreme Court of Oklahoma held that where a passenger sat down on a seat on the bus and was injured by penetration of an ordinary needle into her buttock, but where there was no evidence to explain the reason for the presence of the needle on the seat or to connect its presence with any act of the bus company, the carrier was not liable for the injury sustained by the passenger. In that case, as in this one, all that the evidence revealed "was that the plaintiff received an injury from an instrumentality which constituted a hidden defect or danger." *Id.*

In holding that there was no evidence of appellant's negligence sufficient to permit the jury to consider the issue, there is no retreat from the rule, long adhered to in Maryland, that a carrier is held to a strict duty of care in transporting its passengers safely. *Brooks v. Sun Cab Co., supra* at 242. However, a common carrier is not the insurer of absolute safety; nor has the law imposed upon it any rule of liability without fault. When a common carrier is charged with negligence in permitting the presence of debris or foreign substances on its vehicles or other property, the same prerequisites of notice apply to it as apply to other business enterprises so charged.

*See, e.g., Lloyd v. Bowles*, 260 Md. 568, 572, 273 A. 2d 193 (1971). Such a suit, to succeed, must show that the carrier had either actual or constructive notice of the existence of the foreign substance and had failed to remove it. *Lusby v. Baltimore Transit Co., supra* at 125. The doctrine of constructive notice often may provide a wide opening through which to establish that a common carrier has breached its duty of due care to its passengers. *Hanway v. Baltimore & Ohio Railroad Co.*, 126 Md. 535, 542, 95 A. 160 (1915). Nevertheless, there are limits. These were transgressed in this case. There was absolutely no evidence produced by the appellee from which the jury would be entitled to find that the appellant knew, or by the exercise of proper care and diligence should have known, of the presence of the coke bottle in the seat on the evening of the accident.

*Judgment reversed; appellee to pay costs.*