WILLORIS MILLER *v.* MASS TRANSIT
ADMINISTRATION

[No. 442, September Term, 1972.]

*Decided July 3, 1973.*

The cause was argued before POWERS, MOYLAN and
DAVIDSON, JJ.

*Samuel Blibaum* for appellant.

*John J. O'Meara* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

Appellant sued appellee for damages for the personal
injury she suffered while boarding appellee's bus. On 11 May
1972 in the Superior Court of Baltimore City, the case was
tried before a jury, Judge Harry A. Cole presiding. At the
conclusion of all of the evidence, the court granted appellee's
motion for a directed verdict.

On appeal, the issue is whether appellant produced
sufficient evidence to warrant submission of the case to the
jury. In resolving that issue, it is not for this Court to weigh
the evidence, but rather to determine whether the evidence
before the trial court, when construed most favorably to
appellant's position, would sustain her claim. *Jacobson v.
Julian*, 246 Md. 549, 555-56, 229 A. 2d 108, 112-13 (1967). The
only evidence which need be considered in this
determination is that relating to the issue of negligence.

Appellant testified that on 25 May 1971, she boarded an
MTA bus with a bag in her left hand and arms and a
shopping bag, her pocketbook and her bus fare in her right
hand. She had her left foot on the bottom step and her right
foot on the second step when the bus started off. She
testified that when it started, "the man was rough like,"

meaning "he taken off like he was in a hurry like." Appellant lost her balance and fell down on her hands and knees.

Appellant contends that this evidence showed that she was in a position of peril known to appellee. Therefore, she contends, the showing that the bus started while she was in that position was sufficient evidence of appellee's negligence to justify submission of the case to the jury. Appellant contends further that even if her position was not one of peril, her showing of a rough, hurried start was sufficient evidence of appellee's negligence. Appellee disputes both contentions.

The general principles applicable to the issues in this case are well settled. A bus driver owes passengers the duty to exercise the highest degree of care consistent with the nature of his undertaking. *Carolina Coach Company v. Bradley*, 17 Md. App. 51, 54, 299 A. 2d 474, 477 (1973); *see Jacobson v. Julian, supra*, 246 Md. at 559, 229 A. 2d at 115. This obligation includes the duty to stop long enough to enable passengers to board the vehicle safely and reach a place of safety before the bus is started. Starting a vehicle at a time when the operator has reason to apprehend danger to the passenger because he has not reached such a position of safety is premature and constitutes negligence on the part of the carrier. *Grinath v. Baltimore and Bel Air Ry. Co.*, 145 Md. 290, 293, 125 A. 604, 605-06 (1924); *Plummer v. W., B. & A. Elec. R.R. Co.*, 124 Md. 200, 207, 92 A. 536, 538 (1914); *Baltimore City Pass. Ry. Co. v. Baer*, 90 Md. 97, 107-08, 44 A. 992, 994 (1899); *Baltimore Traction Co. v. State, Use of Ringgold*, 78 Md. 409, 426, 28 A. 397, 399 (1894); *Central Ry. Co. v. Smith*, 74 Md. 212, 218-19, 21 A. 706, 707-08 (1891). Once the passenger has reached a place of safety or is "fairly on board," it becomes his duty to use reasonable care to protect himself against movement of the vehicle which is the normal incident of public transportation. *Retkowsky v. Balto. Transit Co.*, 222 Md. 433, 437, 160 A. 2d 791, 793 (1960), and cases cited therein. Thereafter, the operator is not required to wait until the passenger has reached a seat before starting, absent special circumstances such as a passenger laboring under some apparent infirmity or

disability. Starting the car after a passenger has gotten safely on board but before he is seated constitutes negligence on the part of the carrier only if the bus is started in an unusual, abnormal, extraordinary or negligent manner. *Przyborowski v. Balto. Transit Co.*, 191 Md. 63, 66, 59 A. 2d 687, 688 (1948); *Brocato v. United Rys. and Elec. Co.*, 129 Md. 572, 575, 99 A. 792, 793 (1917); *Carolina Coach Co. v. Bradley, supra*, 17 Md. App. at 55, 299 A. 2d at 477. Stated in another way, a public carrier

" . . . may be started after a passenger has got on board the car, and before he has reached a seat, unless there is some reason to apprehend danger in so doing, or the movement is in a negligent manner." *Plummer v. W., B. & A. Elec. R.R. Co., supra.*

Applying these general principles to the instant case, we dispose first of the contention that the manner of starting the bus was negligent. Mere statements that the bus started "rough like" or "like he was in a hurry" are not sufficient in this state to establish negligence on the part of the operator. *Johnston v. Greyhound Corp.*, 139 F. Supp. 551, 555-56 (D. Md. 1956); *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 146, 78 A. 2d 464, 467 (1951); *Carolina Coach Co. v. Bradley, supra.* We are not persuaded by appellant's agrument that reasons of public policy warrant departure from these precedents. We find that the evidence was not sufficient to warrant submission to the jury of the issue of the alleged negligence of the operator in his manner of starting the bus.

Appellant's other contention, that she was in a position of peril when the bus started, raises a more difficult issue. Appellee argues that appellant failed to show, other than by inference, where she was on the bus when it started. In fact, appellee says, all of the evidence offered by appellant warrants the inference that she had safely boarded the bus and was moving toward a seat when it started. While appellant's testimony was not detailed and her evidence in its totality permits more than a single inference, her testimony that she had her left foot on the bottom step and

her right foot on the second step when the bus started off was sufficient to permit a jury to infer that appellant was in the process of mounting the steps to the floor of the bus when the bus started. Therefore, we must assume this to be the fact for purposes of this decision. *Retkowsky v. Balto. Transit Co., supra,* 222 Md. at 435, 160 A. 2d at 792. The only remaining question is whether evidence that a passenger was mounting the stairs of a bus when it started is sufficient to submit to the jury the question of whether the passenger had reached a position of safety prior to the starting of the bus.

Appellee contends that as a matter of law, appellant was not in a position of peril such that the operator of the bus was charged with the duty of keeping it stationary. In support of this position, he relies on the cases of *Brocato v. United Rys. Co., supra, Przyborowski v. Balto. Transit Co., supra,* and *Retkowsky v. Balto. Transit Co., supra.*

In *Brocato,* the plaintiff had gotten both feet upon an exterior platform of a trolley car, a level area large enough to hold a number of passengers and upon which other passengers were then standing. She attempted to move from this "platform" to the interior of the car. The passenger standing behind her testified that "just as she caught her foot on the step that leads into the car from the platform the car gave a jerk and she fell down and shoved me back." The Court held these facts, unassociated with any unusual circumstances or conditions, insufficient to show negligence on the part of the company in starting the car while the plaintiff was still upon the platform and before she was seated.

In *Przyborowski,* the plaintiff boarded a trackless trolley. She put her fare in the fare box and handed a "return slip," which entitled her to a reduced fare, to the operator. The slip fluttered to the floor, and she stooped down on both knees to retrieve the slip. While she was so engaged, the trolley started with a very fast jerk and threw her to the floor. The Court there held that the passenger was "fairly aboard" and affirmed the trial court's directed verdict for the defendant.

In *Retkowski,* the plaintiff, a woman 66 years of age and

carrying two shopping bags, boarded a streetcar. After getting on the car, she set one bag down, deposited her money in the fare box with her right hand, said to the operator, "just a minute," and started to turn around. As she got "turned around in front of the box," the operator started the car with a very sudden jerk which threw her off balance and down onto the floor. The Court of Appeals affirmed the directed verdict in favor of the carrier.

All of these cases are part of a long line of cases, too numerous to review here, which make it abundantly clear that once a passenger has planted both feet on a level portion of the floor of a vehicle sufficient in size to carry passengers in safety — be the place within or without the actual body of the car — he is in a place of safety and fairly on board. The duty is then his to see that he is not harmed by the normal movements of the car. Thus, where the passenger has gotten both feet onto a level portion of a back platform leading to the interior of the car, as in *Brocato*, has gotten both feet onto a level portion of the floor of the interior of the vehicle near the fare box, as in *Retkowski*, or has gotten both feet onto a level portion of the floor of the vehicle near the fare box and then has stooped down to her knees, as in *Przyborowski*, the issue of negligence cannot be submitted to the jury unless there is evidence to show that the injury was caused by an unusual, extraordinary, or abnormal start. None of these cases deal with the issue presented here of whether a passenger mounting the steps to the floor of a public conveyance has, as a matter of law, reached a position of safety.

In *Baltimore City Pass. Ry. Co. v. Baer, supra*, there was evidence to show that the appellee attempted to board an open trolley car when it had come to a stop. He had gotten both feet upon a narrow footboard which ran alongside of the car and was about to step up into the car when, at a signal of the conductor, it started with a sudden jar. He was thrown off the footboard and dragged along the street for 30 to 50 feet before the conductor was able to stop the car. At trial, the defendant's motion for a directed verdict on the ground that the evidence of the carrier's negligence was

226

insufficient was denied. On appeal, the Court of Appeals affirmed the trial court and held the evidence sufficient to submit the issue of the carrier's negligence to the jury. The Court there said:

"If the appellee's testimony be true, the conductor of the car was made aware of his desire to board the car and stopped it for the purpose of allowing him to do so. If the conductor then started the car prematurely without allowing the appellee a reasonable opportunity under the circumstances of first taking a safe position, he was guilty of negligence, and under the rulings of this Court in *Central Railway Co. v. Smith,* 74 Md. 214, and *Baltimore Traction Co. v. Ringgold,* 78 Md. 426, the appellee was entitled to recover. It is desirable, in order to facilitate rapid transit in large cities, that passengers should be prompt in entering and departing from street cars, but those operating the cars must take every reasonable precaution for the protection of the passengers. It is a well-known fact that the footboard running along the side of the ordinary open trolley car is narrow, and that both the step from the pavement to the footboard and the one from the latter to the floor of the car are high. *A fair opportunity of taking these two steps in safety should always be afforded to the passenger before starting the car."* (Emphasis supplied.) 90 Md. at 107-08, 44 A. at 994.

In *Oklahoma Ry. Co. v. Parker,* 201 Okla. 193, 203 P. 2d 875 (1949), the Supreme Court of Oklahoma considered the precise question presented in this case. There the evidence showed that a streetcar came to a stop at a regular passenger stop for the purpose of permitting the plaintiff to enter as a passenger. The passenger testified that after the streetcar came to a stop, she stepped on the bottom step of the car with her left foot, stepped on the second step with her right foot, and was stepping onto the floor level with her left foot when, while she was in the act of stepping onto the

floor level with her right foot, the motorman started the car with a sudden jerk which threw her backwards down the steps. The motorman testified that when he started the car, plaintiff had her left foot on the floor of the vehicle, her right foot on the second step, and had a hand raised over the fare box into which she was dropping tokens. At trial, defendant's motion for a directed verdict on the ground of insufficient evidence of the carrier's negligence was denied. On appeal, the Court rejected the carrier's claim that plaintiff was on the streetcar in a place of safety at the time it started and affirmed the denial of the motion for directed verdict. The Court said:

> "As above noted, the plaintiff testified that she was in continuous movement from the time she stepped on the lower step of the car until the car started; that she passed the upright support on the lower step and did not have an opportunity to fully reach the floor of the car before the start, and was unable to reach the upright support on the floor of the car before the car started, and was unable to save herself from falling down the steps.
>
> "It is undisputed that plaintiff fell with the start of the car.
>
> "In 10 Am. Jur., Carriers, § 1432, the following applicable rule is stated:
>
>> 'In the instance of persons boarding or alighting from a carrier's conveyance, any movement of the vehicle before the passenger has had a reasonable opportunity to reach a place of safety therein or to alight is negligence, rendering the carrier liable for the resulting injuries.'
>
> "Obviously a passenger walking up steps of a street car and without hand support might become overbalanced or fall upon a movement of the car not expected. We do not perceive that a passenger entering upon the steps of a street car, and

in movement up the steps of a car, and before reaching the floor of the car, might reasonably expect the car to start. It is equally clear that a motorman, under such circumstances, having due regard for the safety of an entering passenger and in the exercise of due diligence, should have noted the passenger's position and should have foreseen that it was dangerous to start the car.

"As was said by the court in its syllabus in *Steeg v. St. Paul City Ry. Co.*, 50 Minn. 149, 52 N.W. 393, 16 L.R.A. 379:

'The servants of a street car company who control the movements of its cars are bound to use due care in starting the same so as to allow passengers a reasonable opportunity to get safely on board, regard being had to the circumstances of each case.'

"Herein, the question whether the car was started before the plaintiff had a reasonable opportunity to reach a place of safety therein was one for the jury." 203 P. 2d at 876-77.

The courts of other states are in accord. *See, e.g., Memphis St. Ry. Co. v. Huggins*, 215 F. 37, 39 (6th Cir. 1914); *St. Louis Southwestern Ry. Co. v. Wainwright*, 152 F. 624, 626 (8th Cir. 1907); *Cohen v. West Chicago St. Ry. Co.*, 60 F. 698, 702-03 (7th Cir. 1894); *Huckaby v. St. Louis, I. M. & S. Ry. Co.*, 119 Ark. 179, 177 S. W. 923, 925 (1915); *Hellman v. Los Angeles Ry. Corp.*, 135 Cal. App. 627, 27 P. 2d 946, 948-49 (1934); *Waller v. Wilmington City Ry. Co.*, 5 Pen. 374, 61 A. 874 (Super. Ct. Del. 1905); *Jacobsen v. Cummings*, 318 Ill. App. 464, 48 N.E.2d 603, 605 (1943); *South Covington & C. St. Ry. Co. v. Heinrich*, 170 Ky. 499, 186 S. W. 187, 188 (1916); *Chesapeake & O. Ry. Co. v. Borders*, 140 Ky. 548, 131 S. W. 388, 389 (1910); *Gorman v. Massachusetts Bay Transportation Authority*, 350 Mass. 760, 212 N.E.2d 568 (1965); *Beattie v. Detroit United Ry.*, 158 Mich. 243, 122 N. W. 557, 558 (1909); *Gaffney v. St. Paul City Ry. Co.*, 81 Minn. 459, 84 N. W. 304 (1900); *Steeg v. St. Paul City Ry. Co.*, 50 Minn. 149, 52 N. W. 393 (1892); *McSwyny v. Broadway &*

*S.A.R. Co.*, 7 N. Y. Supp. 456, 458 (Sup. Ct. 1889); *Tompkins v. Portland Ry., Light & Power Co.*, 77 Ore. 174, 150 P. 758 (1915); *Donnelly v. Pennsylvania Co.*, 252 Pa. 175, 97 A. 272 (1916); *Blue Ridge Light & Power Co. v. Price*, 108 Va. 652, 62 S. E. 938 (1908); *Blau v. Puget Sound Traction, Light & Power Co.*, 88 Wash. 260, 152 P. 1023, 1024 (1915); *Normile v. Wheeling Traction Co.*, 57 W. Va. 132, 49 S. E. 1030 (1905); *Otto v. Milwaukee Northern Ry. Co.*, 148 Wis. 54, 134 N. W. 157, 159 (1912); Anno., *Duty and Liability of Motorbus to Persons Boarding Bus*, 93 A.L.R.2d 237, § 10(a) at 254-56 (1964) and cases cited therein; Anno., *Motor Carrier's Liability for Injury to Passenger by Sudden Stopping, Starting, or Lurching of Conveyance*, 57 A.L.R.2d 5, § 2 (2) at 13-15 (1958) and cases cited therein. *See also Miller v. New Orleans Public Service, Inc.*, 196 So. 86, 87 (La. App. 1940); *Saunders v. Boston Elevated Ry. Co.*, 216 Mass. 355, 103 N. E. 779 (1914); *Straight v. United Electric Rys. Co.*, 46 R. I. 383, 128 A. 571 (1925). We find no authority to the contrary.

We are persuaded that a passenger mounting the stairs to a public conveyance who has not yet placed both feet upon the floor of an area sufficiently large to carry passengers in safety, has not, as a matter of law, reached a position of safety so as to absolve the carrier of any further responsibility to keep the vehicle stationary. Weighing the public interest in a rapid mass transit system against the right of the individual to be protected from the negligent acts of others, particularly those providing mass transportation, we can only conclude that the amount of delay incident to permitting a person to reach a level portion of the floor of a public conveyance before it is started is far outweighed by the injury which may be suffered by an individual who is not given a reasonable opportunity to board. In an ever more complex society, characterized by the expanding need for the utilization of mass transit by a sophisticated, mobile and hurrying population, the right of the individual to participate in the utilization of such facilities, free of the fear of negligent injury, must be zealously preserved. *See* 14 Am. Jur. 2d, *Carriers*, § 1016 at 437.

230

Accordingly, we believe that the evidence that the plaintiff was on the stairs of the bus and had not yet reached the floor when the bus started was sufficient to submit to the jury the question of whether the car was started before she had a reasonable opportunity to reach a place of safety. The trial court erred in granting the appellee's motion for a directed verdict. The judgment must be reversed.

*Judgment reversed; case remanded for a new trial.*

*Costs to be paid by appellee.*